670 A.2d 173

**Mark HUNGER, Appellant**

v.

**GRAND CENTRAL SANITATION and Gary Perin.**

Superior Court of Pennsylvania.

Argued Aug. 1, 1995.

Filed Jan. 18, 1996.

576

Glennis L. Clark, Allentown, for appellant.

Anthony J. Martino, Bangor, for appellees.

Before BECK, SAYLOR and HESTER, JJ.

HESTER, Judge:

Mark Hunger appeals from the December 9, 1994 grant of summary judgment to appellees, Grand Central Sanitation and Gary Perin. We are constrained to affirm under current precedent of this court.

Appellant instituted this action on January 26, 1993, against his former employer and Mr. Perin, who terminated appellant. The action is based upon wrongful discharge, intentional infliction of emotional distress, and negligent infliction of emotional distress. Appellees filed an answer and new matter. After these pleadings were filed, appellees moved for summary judgment, which was granted. This appeal followed.

We first examine our standard of review in the summary judgment context. The evidence must be viewed in the light most favorable to the non-moving party, and he must be given all the reasonable inferences created by his evidence. *Long v. Norriton Hydraulics, Inc.,* 443 Pa.Super. 532, 662 A.2d 1089 (1995). Nonetheless, "[i]f there are no material issues of fact in dispute, and plaintiff has failed to allege facts sufficient to make out a *prima facie* case, as a matter of law, then summary judgment may be granted properly." *Dudley v. USX Corp,* 414 Pa.Super. 160, 169–70, 606 A.2d 916, 920 (1992). Thus, where there are no credibility issues and the allegations of the appealing party, if accepted as true, fail to make out a *prima facie* case as a matter of law rather than as a matter of fact, summary judgment is appropriate. *Id.*

We therefore accept as true the following factual allegations contained in appellant's complaint and affidavit. Appellant

was employed by Grand Central Sanitation ("Grand Central") on June 28, 1990, as the company's safety director. Mr. Perin is the vice-president and owner of Grand Central. On September 7, 1991, appellant "became aware" that hazardous materials consisting of blasting caps were being deposited into garbage containers at Shu–Deb Inc. ("Shu–Deb"). Reproduced Record, ("R.R.") at 3a. The complaint contains no averments about how appellant became aware of this information. Grand Central picked up garbage for Shu–Deb and dumped it at a dump site. Appellant knew that Grand Central was not licensed to dispose of hazardous materials at any of its dump sites and believed that it would be a violation of federal law, state law, or both if the company transported or disposed of hazardous materials. Appellant also became concerned about the safety of company employees from the danger of transporting blasting caps.

On September 9, 1991, appellant told Mr. Perin about the information he received that blasting caps were being dumped into the containers at Shu–Deb. The next day, he contacted state and local police asking for a description of blasting caps, which he never had seen. He also made arrangements to search Shu–Deb's garbage container.

On September 12, 1991, appellant, accompanied by Pennsylvania State Police and members of the federal Bureau of Alcohol, Tobacco, and Firearms, went to search the contents of the garbage container. When appellant and police arrived at Shu–Deb, the garbage had been collected, so police located the garbage truck that had the garbage and searched it. "No hazardous materials were found." R.R. 4a. On October 4, 1991, appellant was discharged as a result of the incident.

■ Appellant first alleges that his wrongful discharge claim was dismissed improperly due to the public policy exception to the doctrine of at-will employment. We examine the applicable law:

In Pennsylvania, as a general rule, no common law cause of action exists against an employer for termination of an at-will employment relationship. *Krajsa v. Keypunch, Inc.,*

424 Pa.Super. 230, 237, 622 A.2d 355, 358 (1993) ("an at will employee may be terminated for good reason, bad reason, or no reason at all"). Moreover, "exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten the clear mandates of public policy." *Id.* at 237, 622 A.2d at 358....

*Holewinski v. Children's Hospital of Pittsburgh*, 437 Pa.Super. 174, 178, 649 A.2d 712, 715 (1994).

The public policy exception to the at-will doctrine was recognized by our Supreme Court in *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), a case remarkably similar to the one at bar. There, the plaintiff was a salesman for the defendant and criticized to company officials above his immediate supervisors the quality of the steel being produced. He was discharged even though the product later was determined to be substandard and withdrawn from the market. Geary alleged that his termination fell within a public policy exception to the at-will doctrine since he was acting in the interest of the safety of the general public.

While the Supreme Court recognized that a public policy exception may exist under appropriate conditions, it rejected plaintiff's argument that his allegations fell within its ambit on two grounds. First, the plaintiff was not obligated statutorily to report defective products. Second, on its face, the complaint offered the existence of a plausible reason for discharge in that the plaintiff had bypassed his immediate supervisors to make the complaint.

To state a public policy exception to the at-will-employment doctrine, the employee must point to a clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision. *Jacques v. Akzo International Salt, Inc.*, 422 Pa.Super. 419, 619 A.2d 748 (1993). Furthermore, the stated mandate of public policy, as articulated in the constitution, statute, or judicial decision, must be applicable directly to the employee and the employee's actions. It is not sufficient that the employer's actions toward the

employee are unfair. *Reese v. Tom Hesser Chevrolet–BMW,* 413 Pa.Super. 168, 604 A.2d 1072 (1992) (fact that employer required employee, as condition of continued employment, to reimburse it for losses attributable to action of employee may have been unfair but did not violate law; therefore, employee failed to state public policy exception to doctrine of at-will employment); *Darlington v. General Electric,* 350 Pa.Super. 183, 504 A.2d 306 (1986) (no public policy exception to at-will employment doctrine found even though employee was discharged unfairly in that he was not afforded the opportunity to defend himself against allegations of accounting irregularities).

■ We have recognized a public policy exception only in extremely limited circumstances. If an employee is fired for performing a function that he is *required* to perform by law, an action for wrongful discharge on public policy grounds will be allowed. *See e.g., Field v. Philadelphia Electric Co.,* 388 Pa.Super. 400, 565 A.2d 1170 (1989) (employee fired for reporting a nuclear safety violation that he was required to report under federal law); *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978) (employer fired an employee for serving on a jury; public policy was violated since people are required by law to serve on jury and since service on jury has constitutional implications).

■ A public policy exception to the at-will doctrine also will be found when the firing itself is a criminal activity as in *Kroen v. Bedway Security Agency, Inc.,* 430 Pa.Super. 83, 633 A.2d 628 (1993). There, an employer fired an employee for refusing to take a polygraph test. It is illegal for a person to require, as a condition for employment or continuation of employment, that an employee take a polygraph test. 18 Pa.S.C. § 7321.

■ Herein, appellant notes that it is illegal to transport hazardous materials without a license. We agree. However, appellant admitted in his complaint that no blasting caps were discovered. Thus, appellees did not violate the law. If appellant had observed a deliberate violation of the law, reported it

to proper authorities, and was fired, then the reasoning of *Kroen* may have been applicable. There is no indication that this occurred herein.

In this case, appellant's actions were premature. He provides no specifics about how he "became aware" that blasting caps were being dumped. R.R. at 3a. He fails to indicate the capacity of the person who informed him of this, the nature of his investigation into substantiating the reliability of the information, and why it was necessary to inform state and federal law enforcement officials about the situation immediately.

Our disposition of this case may have been different if appellant discovered that his employer was deliberately transporting hazardous materials after being told of the situation. That is not what occurred, regardless of appellant's concern with the public safety. The source of appellant's "awareness" of the alleged illegal activities is completely unsubstantiated. Furthermore, his employer's criminal intent is not established. At most, one of the employer's customers allegedly was dumping illegal explosives.

We also are guided herein by *Krajsa v. Keypunch, Inc.*, 424 Pa.Super. 230, 622 A.2d 355, 358 (1993), where we examined Pennsylvania's Whistleblower's Law, 43 Pa.C.S. §§ 1421, *et seq.* That act provides that persons may not be discharged from a public body for reporting to an appropriate body instances of waste, mismanagement, or violations of the law. In that case, an employee of a private employer alleged that he had been terminated for reporting illegal activities of his employer. We held that no cause of action for wrongful discharge existed because the Whistleblower's Law does not apply to private employers.

■ The reasoning of *Krajsa* controls this case. Appellant argues that he was fired for reporting a violation of the Solid Waste Management Act. He concedes that he was not under a statutory duty to report the alleged violation. Appellant's brief at 14. Under *Krajsa*, a firing which resulted solely due to an employee's decision to report his employer's illegal

activities is not actionable. The firing must be specifically prohibited by statute.

Furthermore, the Supreme Court in *Geary* held that if reasonable grounds for the firing are apparent on the face of the complaint, a wrongful discharge action will be dismissed. Herein, we concur with the trial court's conclusion that appellant's actions, as set forth in the complaint, provided a reasonable basis for his firing:

> [T]he complaint itself leaves open for implication separate, plausible and legitimate reasons for the plaintiff's termination. An employer, under the facts presented, may wish his safety director to treat a potential violation of waste management laws differently. The scenarios are abundant. The safety director could have addressed the issue to the customer first; could have personally inspected the refuse before it was dumped into the employer's truck; and he could have advised the employer to refuse the offending waste.

Trial court opinion, 12/9/94, at 16–17. We agree with the trial court that appellant's overzealous decision to treat the information he received as para-military matter was grounds for termination. By immediately bringing in state and federal officials after "becoming aware" of a possible violation of the law, appellant embarrassed his employer and his employer's customer.

We next discuss whether appellant has stated a claim for intentional infliction of emotional distress. As indicated in *Field v. Philadelphia Electric Co., supra,* a cause of action for intentional infliction of emotional distress will lie where the dictates of section 46 of the Restatement (Second) of Torts are satisfied. That section provides:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Thus, at the onset, the defendant's conduct must be extreme and outrageous. *Parano v. O'Connor*, 433 Pa.Super. 570, 641 A.2d 607 (1994). The definition of outrageous conduct also is set forth in the Restatement:

> d. Extreme and outrageous conduct.
>
> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's [sic] feelings are hurt.

Restatement (Second) of Torts § 46 comment d.

The fact that appellant was fired for embarrassing his employer and a customer is not shocking or outrageous. It hardly is an atrocity which no civilized society can tolerate.

■ Furthermore, a plaintiff pleading the existence of emotional distress must substantiate that he actually suffered the claimed distress with expert medical confirmation. *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d

988 (1987). There must be objective proof, with competent medical evidence, for a plaintiff to proceed with a claim for intentional infliction of emotional distress. *Kazatsky v. King David Memorial Park, Inc., supra; Fewell v. Besner,* 444 Pa.Super. 559, 664 A.2d 577 (1995). In this case, appellant cursorily has alleged that he suffered bodily harm due to his firing but failed to oppose the summary judgment motion with medical evidence supporting this claim. For that reason alone, the trial court's dismissal of this count was proper.

Finally, appellant argues that the trial court improperly dismissed his claim for negligent infliction of emotional distress. A cause of action for negligent infliction of emotional distress exists in only two circumstances: 1) where a close family member experiences a contemporaneous sensory observance of physical injuries being inflicted on another family member, *Krysmalski v. Tarasovich,* 424 Pa.Super. 121, 622 A.2d 298 (1993); or 2) where the plaintiff nearly experiences a physical impact in that he was in the zone of danger of the defendant's tortious conduct, *Kazatsky v. King David Memorial Park, Inc., supra.* Clearly, neither situation exists herein. A plaintiff cannot recover for emotional upset where there is no physical impact involved in the case at all. *Id.* Such is the case at bar.

Order affirmed.

BECK, J., files a concurring opinion.

BECK, Judge, concurring.

I concur in the majority's conclusion that summary judgment was properly entered in favor of defendants-appellees in this case. However, I am unable to join in the majority's discussion of the legal principles applicable in assessing plaintiff-appellant's claims.

Initially, I note that although this matter was adjudicated by the trial court based on appellees' motion for summary judgment, that motion was not supported by any depositions, affidavits or other materials as provided for in Pa.R.C.P. 1035 (providing that a party may move for "summary judgment on

the pleadings and any depositions, answers to interrogatories, admissions on file and supporting affidavits"). In the absence of such supporting materials, appellees' motion for summary judgment essentially asked for judgment on the pleadings. The standard and scope of our review of a trial court's grant or denial of judgment on the pleadings are well established.

A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1034; *Giddings v. Tartler*, 130 Pa.Cmwlth. 175, 177, 567 A.2d 766, 767 (1989). Thus, "[i]n reviewing a trial court's decision to grant judgment on the pleadings, the scope of review of the appellate court is plenary; the reviewing court must determine if the action of the trial court was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury." *Vogel v. Berkley*, 354 Pa.Super. 291, 296, 511 A.2d 878, 880 (1986), *quoted in Keystone Automated Equipment v. Reliance*, 369 Pa.Super. 472, 475, 535 A.2d 648, 649 (1988), *alloc. den.*, 519 Pa. 654, 546 A.2d 59. An appellate court must accept as true all well-pleaded facts of the party against whom the motion is made, while considering against him only those facts which he specifically admits. *Jones v. Travelers Ins. Co.*, 356 Pa.Super. 213, 217, 514 A.2d 576, 578 (1986); *West Penn Administration, Inc. v. Pittsburgh National Bank*, 289 Pa.Super. 460, 467, 433 A.2d 896, 900 (1981). Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. *Sinn v. Burd*, 486 Pa. 146, 149, 404 A.2d 672, 674 (1979); *Jones, supra*, 356 Pa.Super. at 217, 514 A.2d at 578.... Only when the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings. *Jones, supra*, 356 Pa.Super. at 217, 514 A.2d at 578; *Gallo [v. J.C. Penney Casualty Insurance Company] supra*, 328 Pa.Super. [267] at 270, 476 A.2d [1322] at 1324 (1984).

*Kelly v. Nationwide Ins. Co.,* 414 Pa.Super. 6, 9–10, 606 A.2d 470, 471–72 (1992) *quoted in Hammerstein v. Lindsay,* 440 Pa.Super. 350, 655 A.2d 597 (1995).

Viewed in light of the above principles, the pleadings establish that plaintiff-appellant Mark Hunger was hired by defendant Grand Central Sanitation, Inc. ("GCS") as its safety director on June 28, 1990. GCS was in the business of collecting, transporting and disposing of garbage. In early September, 1991, Hunger became aware that hazardous materials including blasting caps were being deposited into garbage containers at Shu–Deb Inc., a customer of GCS. Hunger knew that GCS was not licensed to transport hazardous materials or to dispose of them at any of its dump sites, and believed that GCS would be in violation of federal and/or state laws if it transported or disposed of such materials. Hunger also feared injury to GCS personnel or damage to its property if hazardous materials were included in the garbage being collected and transported.

Hunger promptly informed his superior, GCS vice-president Gary Perin, of the possibility that Grand Central Sanitation would be transporting hazardous materials by picking up garbage containers from Shu–Deb, Inc. Hunger also contacted the Pennsylvania State Police and Allentown Police in order to obtain a description of blasting caps. At the request of the State Police and members of the federal Bureau of Alcohol, Tobacco and Firearms, Hunger consented to allow a search of Shu–Deb's garbage containers and made arrangements for such a search. On September 12, 1991, when Hunger and the law enforcement personnel arrived to conduct the search, the garbage container had already been emptied into a GCS truck. The truck was stopped and searched at roadside, but no hazardous materials were found.

Following the incident on September 12, 1991, Hunger's superiors expressed numerous resentments and ill feelings directly and indirectly to Hunger, and harassed him concerning his duties as safety director. Hunger suffered emotional distress and emotional and physical suffering, including depression, humiliation, mental anguish, embarrassment and

damage to his career. On October 4, 1991, Hunger was discharged from employment at GCS.

Based upon the above events, Hunger filed a three-count complaint against GCS and its vice-president Gary Perin, alleging wrongful discharge, intentional infliction of emotional distress and negligent infliction of emotional distress. These claims will be addressed in sequence.

The first count of Hunger's complaint asserts that his discharge from employment with GCS was wrongful because it violated public policy. Like the majority, I conclude that Hunger has failed as a matter of law to make out a cognizable claim for wrongful discharge.

As the majority correctly notes, Hunger was an at-will employee of GCS. As a general rule, there is no common law cause of action for termination of an at-will employment relationship. *Krajsa v. Keypunch, Inc.*, 424 Pa.Super. 230, 237, 622 A.2d 355, 358 (1993). Exceptions to this general rule have been narrowly carved out and vigilantly guarded by the courts of this Commonwealth. In this case, appellant asserts that recovery should be permitted because his discharge violated public policy.

Under the public policy exception to the at-will employment doctrine,

> [a]n employer's liability for wrongful discharge rests on whether a "well-recognized facet of public policy is at stake," *Macken v. Lord Corp.*, 402 Pa.Super. 1, 4, 585 A.2d 1106, 1108 (1991), a policy which "strikes at the heart of [a] citizen's social right, duties, and responsibilities." *Field v. Philadelphia Electric Co.*, [388 Pa.Super. 400, 418, 565 A.2d 1170, 1179 (1989) ]. "The basis of this limited, nonstatutory cause of action is an appreciation of the fact that the employer's interest in running his business efficiently, profitably, and as he sees fit is not absolute; important as it is, it exists in the context of, and must sometimes yield to, other interests, including the interest of the employee in making a living and the interest of the public in seeing to it that the employer does not act abusively and a proper

balance between the employer's and the employee's interests is preserved." *Yaindl v. Ingersoll–Rand Co. Std. Pump–Aldrich Div.*, 281 Pa.Super. 560, 571–72, 422 A.2d 611, 616 (1980).

*Highhouse v. Avery Transportation*, 443 Pa.Super. 120, 125, 660 A.2d 1374, 1377 (1995). As the majority notes, this court has held that a clear mandate of public policy sufficient to overcome the general principles of at-will employment will be found only where such a policy has been reduced to a clear legislative mandate reflected in a constitutional, statutory or regulatory provision. *Krajsa v. Keypunch, Inc., supra* at 239, 622 A.2d at 359; *Jacques v. Akzo International Salt, Inc.*, 422 Pa.Super. 419, 429, 619 A.2d 748, 753 (1993) (citing *Yetter v. Ward Trucking Corp.*, 401 Pa.Super. 467, 474, 585 A.2d 1022, 1026 (1991)).

Based upon the above authority, the majority concludes that appellant's discharge would violate public policy under severely limited circumstances. The majority would recognize a public policy violation if the employee was discharged because he refused to follow an order which violated a criminal statute. (citing *Kroen v. Bedway Security Agency, Inc.*, 430 Pa.Super. 83, 633 A.2d 628 (1993) (discharge for refusing to undergo a polygraph test in contravention of 18 Pa.C.S. § 7321 which provides criminal sanctions against an employer who demands an employee take a polygraph test.)) The employee's discharge would also violate public policy if he was discharged for performing an act that he was required to perform under a statute (citing *Field v. Philadelphia Electric Co., supra* (discharge for reporting safety violation in nuclear power plant where report was required by federal law); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (discharge for answering summons for jury duty)). I cannot agree that the public policy exception to the doctrine of employment at will can be as narrowly drawn as the majority has done.

The majority has not taken notice of certain exceptions to the employment-at-will doctrine that have developed in a recent line of cases. This court has held that discharge of an

at-will employee is actionable if the employee is discharged for exercising a statutorily protected right. *Raykovitz v. K Mart Corp.*, 445 Pa.Super. 378, 665 A.2d 833 (1995) (discharge for collecting partial unemployment compensation based on previous full-time job while employed part-time by K Mart would violate public policy embodied in statute rendering void any agreement by employee to waive, release or commute rights to unemployment compensation); *Highhouse v. Avery Transportation, supra* (constructive discharge for filing unemployment compensation claim during periods when employer offered no work to employee would violate public policy embodied in statute rendering void any agreement by employee to waive, release or commute rights to unemployment compensation). *See also Macken v. Lord Corp., supra* (suggesting that Pennsylvania courts would recognize wrongful discharge claim based upon discharge in retaliation for filing workers' compensation claim); *Sorge v. Wright's Knitwear Corp.*, 832 F.Supp. 118 (E.D.Pa.1993) (under Pennsylvania law, discharge for reporting safety violations to OSHA would violate public policy embodied in federal statute protecting employees who voluntarily file complaints under Occupational Safety and Health Act); *Kilpatrick v. Delaware County S.P.C.A.*, 632 F.Supp. 542 (E.D.Pa.1986) (under Pennsylvania law, discharge for reporting safety violations to Pennsylvania Department of Agriculture would violate public policy embodied in federal statute protecting employees who voluntarily file complaints under or related to Occupational Safety and Health Act).[1]

1. Also instructive, although not directly on point, is *Hunter v. Port Authority of Allegheny County*, 277 Pa.Super. 4, 419 A.2d 631 (1980). In *Hunter*, this court found a violation of public policy in an employer's refusal to hire based upon the fact that the prospective employee had been convicted of assault more than ten years earlier and subsequently pardoned. This court concluded that Article I, section 10 of the Pennsylvania constitution (protecting an individual's right to engage in any of the common occupations of life) and the decision of the Pennsylvania Supreme Court in *Secretary of Revenue v. John's Vending Corp.*, 453 Pa. 488, 309 A.2d 358 (1973) (where prior convictions do not reflect upon applicant's present ability to properly discharge responsibilities required of licensed wholesale cigarette vendor, revocation of license based on convictions violates citizen's right to engage in lawful employment) made out a clear public policy to avoid unwarranted stigmatization of and unreasonable restriction upon former offenders,

In each of these cases, the employee was under no statutory duty to act, nor did the termination violate any criminal statute. Nevertheless, a violation of public policy was found based upon statutory or constitutional recognition of an important right the exercise of which was impaired by termination of employment. I find the conclusion inescapable that although a violation of public policy *will* be found where the discharge is in violation of a criminal statute or in retaliation for compliance with a statutory duty, these are not the only situations in which a violation of public policy *may* be found. *See Sorge v. Wright's Knitwear Corp.*, supra at 121 (*Krajsa*, *supra* does not announce exclusive set of circumstances in which a violation of public policy can be found, but simply teaches that in certain circumstances a violation will always be found).

In this case, appellant contends that his discharge was wrongful because it violated the public policy, embodied in the Solid Waste Management Act, 35 Pa.C.S. § 6018.101 *et seq.* ("SWMA"), against transporting, disposing or handling hazardous wastes, including explosives, without the proper permits. However, appellant has not shown that his discharge violated those policies because he has not established a nexus between his continued employment and the public policies upon which he relies. Appellant has not demonstrated that the SWMA protects a right to report suspected violations of its provisions, or that it otherwise provides any particular protections to an employee who suspects that his or her

which policy was violated by the employer's actions. Thus in *Hunter* the "clear mandate of public policy" based in the constitutional provision was found to be violated by the employer's refusal to hire despite the fact that such refusal was neither violative of a specific criminal statute nor based upon the prospective employee's performance of a statutorily required duty. While *Hunter* is distinguishable from the instant case because it involves a public employer and a refusal to hire rather than a discharge from at-will employment, it nevertheless teaches that public policies regarding employment may be found where an employer's actions impinge upon protected rights of employees and not, as the majority would hold, solely where such actions are themselves made criminal or are taken in retaliation for the employee's compliance with a statutory duty.

employer may be violating those provisions.[2]  In the absence of allegations establishing a more direct connection between appellant's discharge and the policies fostered by the SWMA, I must agree with the majority and with the trial court that appellant has failed as a matter of law to make out a cognizable claim for wrongful discharge.[3]

The second count of appellant's complaint raises a claim for intentional infliction of emotional distress.  I agree with the majority that appellant's complaint fails to allege facts sufficient as a matter of law to establish an intentional infliction of emotional distress.

Although our Supreme Court has never explicitly recognized Section 46 of the Restatement (Second) of Torts as the law in Pennsylvania, *see Kazatsky v. King David Memorial*

---

2. The absence of such protections distinguishes this case from those based upon the Occupational Safety and Health Act, *see Sorge v. Wright's Knitwear Corp., supra; Kilpatrick v. Delaware County S.P.C.A., supra,* and Pennsylvania's Unemployment Compensation Law, *see Raykovitz v. K Mart Corp., supra; Highhouse v. Avery Transportation, supra.*

3. I cannot agree with the alternative basis for the majority's holding, namely that appellant's wrongful discharge claim must fail because there were other reasonable grounds for his discharge.  Although our Supreme Court in *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974) held that a claim for wrongful discharge may be defeated if "the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship," *id.* at 184– 85, 319 A.2d at 180, I cannot agree that the pleadings in this case make out such a plausible and legitimate reason for appellant's discharge.
   The majority approves the trial court's finding that
     [T]he complaint itself *leaves open for implication* separate, plausible and legitimate reasons for the plaintiff's termination. An employer, under the facts presented, may wish his safety director to treat a potential violation of waste management laws differently.
   Trial Court Opinion at 16 (emphasis added).  It was clearly improper at this stage of the proceedings for the trial court to draw inferences *against* appellant, the non-moving party.  The only factual averment of the parties' pleadings which bears upon an alternative reason for discharge is appellees' allegation in its new matter that the discharge was based upon appellant's failure to perform his employment duties as required and expected by his employers.  This averment is not supported by specific facts sufficient to permit the court to determine as a matter of law that a legitimate basis existed for appellant's termination. I must thus conclude that summary judgment could not be granted in this case based upon the existence of a plausible, legitimate reason for appellees' discharge of appellant.

*Park,* 515 Pa. 183, 527 A.2d 988 (1987), this court has assessed claims for recovery based on intentional infliction of emotional distress under the standards set forth in that section of the Restatement. *See, e.g., Field v. Philadelphia Electric Co., supra.*

As the majority notes, the Restatement provides that a cause of action for intentional infliction of emotional distress must be based upon extreme and outrageous conduct by the defendant. Restatement (Second) of Torts, § 46. It is for the court to determine, in the first instance, whether the actor's alleged conduct can reasonably be regarded as so extreme and outrageous as to permit recovery. *Reimer v. Tien,* 356 Pa.Super. 192, 514 A.2d 566 (1986) (citing *Dawson v. Zayre Dept. Stores,* 346 Pa.Super. 357, 499 A.2d 648 (1985); Restatement (Second) of Torts § 46, cmt. h).

The Restatement, in comment d to section 46, characterizes extreme and outrageous conduct as "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." Here, the conduct complained of is that "[t]he Defendants expressed numerous resentments and ill feelings directly and indirectly to the Plaintiff," Complaint, ¶ 24 [R.R. p. 5a], and that "[t]he Defendants harassed the Plaintiff concerning the Plaintiff's actions with regard to his duties as a safety director," Complaint, ¶ 25 [R.R. p. 5a]. These allegations are clearly insufficient to establish extreme and outrageous conduct as contemplated by Section 46; rather, they describe the type of "mere insults, indignities, threats, petty oppressions, or other trivialities" to which liability does not extend under the Restatement. Restatement (Second) of Torts § 46, cmt. d.

Because appellant's complaint fails to allege conduct which can reasonably be regarded as so extreme and outrageous as to permit recovery, I agree with the majority that entry of judgment in favor of defendants on that count was proper.[4]

4. I cannot agree with the majority's further statement that judgment for defendants was proper because appellant failed to substantiate that he actually suffered the claimed emotional distress with expert medical

The third count of appellant's complaint asserted a claim for negligent infliction of emotional distress. Like the majority, I must conclude that appellant has failed to allege facts which are capable as a matter of law of making out a claim warranting relief.

As the majority notes, the appellate courts of this Commonwealth have recognized claims for negligent infliction of emotional distress in two circumstances: first, where the plaintiff is in the zone of danger created by the defendant's negligence and is placed in fear of physical impact; and second, where plaintiff witnesses the infliction of physical injury on a close family member. Clearly, the allegations of appellant's complaint fail to make out a cause of action under either of these two theories. The theory underlying appellant's claim of negligent infliction of emotional distress is different, however, and has not adequately been addressed by the majority.

Appellant urges that in *Crivellaro v. Pennsylvania Power & Light Co.*, 341 Pa.Super. 173, 491 A.2d 207 (1985), this court also recognized that an action for negligent infliction of emotional distress can be based upon violation of a pre-existent duty based on a contractual or implied contractual relationship. *Crivellaro* involved a claim for negligent infliction of emotional distress alleging that appellant had suffered severe

confirmation. Had the case gone to trial, objective proof of the claimed harm by competent medical evidence would clearly have been a part of appellant's burden. *Kazatsky v. King David Memorial Park, supra.* However, at this stage of the proceedings, appellant was not required to prove his allegations. Because appellees' motion for summary judgment was not properly supported by documents, depositions or affidavits, appellant was not required to submit such evidence in response, but was entitled to rely on the allegations of his complaint. Pa.R.C.P. 1035(d) ("When a motion for summary judgment is made *and supported as provided in this rule,* an adverse party may not rest on the mere allegations or denials of his pleading." [emphasis added]) In the absence of supporting materials as permitted by Rule 1035, appellees' request for judgment could be based only on the pleadings. In order to overcome appellees' claim for judgment based on the pleadings, appellant was required only to show that his complaint *alleged* facts sufficient to make out the cause of action. His allegation of "emotional and physical harm, depression, humiliation, mental anguish, embarrassment and damage to his career," Complaint, ¶ 27 [R.R. 5a], was sufficient to meet this burden.

emotional distress with various physical manifestations as a result of negligent psychological care received by plaintiff in a treatment program she entered at the insistence of her employer. This court held that plaintiff had adequately alleged physical harm resulting from her emotional distress and had stated a claim sufficient to overcome preliminary objections in the nature of a demurrer.

In *Armstrong v. Paoli Memorial Hospital,* 430 Pa.Super. 36, 633 A.2d 605 (1993) *allocatur denied,* 538 Pa. 663, 649 A.2d 666 (1994), however, this court clarified that although *Crivellaro* recognized a cause of action for negligent infliction of emotional distress in cases other than those involving a plaintiff in the zone of danger or who witnesses injury to a close relative, it did not create an entirely new and independent cause of action. Rather, the *Armstrong* court held that *Crivellaro* should be read to allow recovery only in a situation where a separate, preexisting duty was owed by defendant to plaintiff and breach of that duty was the cause of the emotional distress alleged. *Armstrong, supra* at 50–56, 633 A.2d at 612–15. Under this interpretation of *Crivellaro,* the claim in that case was cognizable only because the actor, an agent of plaintiff's employer, breached a duty of care in the delivery of services to plaintiff.

Appellant argues that the mere existence of an employer-employee relationship between himself and appellees is sufficient to bring his claim within the authority of *Crivellaro.* However, as *Armstrong* makes clear, the significant factor in making out a cause of action under *Crivellaro* is not the mere existence of a relationship between plaintiff and defendant, but rather the existence of a duty flowing from that relationship. Only where such a duty exists, is breached, and causes severe emotional distress leading to bodily harm can a cause of action under *Crivellaro* successfully be asserted. Here, appellant has failed to allege facts showing that the at-will employment relationship between him and appellees imposed upon appellees any duty which was breached when they "expressed resentment and ill feelings directly and indirectly to [appellant]," Complaint, ¶ 29 [R.R. 6a], or "harassed [him] concern-

ing [his] actions with regard to his duties as safety director," Complaint, ¶ 30 [R.R. 6a]. In the absence of allegations establishing duty and breach, appellant's claim for negligent infliction of emotional distress cannot be permitted to proceed.

For the reasons stated above, I would affirm the trial court's entry of judgment in favor of defendants on all three counts of appellant's complaint.