**Kimberly VAN CLEVE, Plaintiff,**

v.

**NORDSTROM, INC., Defendant.**

**No. CIV. A. 99–1426.**

United States District Court,
E.D. Pennsylvania.

Sept. 10, 1999.

**460**

Malcolm W. Berkowitz, Malcolm W. Berkowitz, J.D. & Assoc., Philadelphia, PA, for Plaintiff.

Mary Elizabeth Nagy, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Defendant.

### MEMORANDUM & ORDER

KATZ, Senior District Judge.

In this Title VII case, plaintiff claims that her former employer discriminated against her on the basis of her Seventh Day Adventist religion, in particular because her religion does not permit her to work on Saturday, her Sabbath. Presently before the court is defendant's motion for summary judgment.

*Factual Background*

Kimberly Van Cleve began working for Nordstrom in November 1988 in the cosmetics department of the Clackamas, Oregon store. She was the Counter Manager for the Visage line. When she was hired, she asked to be excused from working Friday evenings and all day every Saturday so that she could observe the Sabbath as required by her religion. Nordstrom complied,[1] and plaintiff was not required to work Friday evening or Saturday.

In 1992, Van Cleve was promoted to Counter Manager for Estee Lauder, which is a higher sales volume line. She also moved from the Clackamas store to the Portland store. In August 1995, she requested to be transferred as Estee Lauder Counter Manager at a new Nordstrom store opening in King of Prussia, Pennsylvania in the spring of 1996. She was not selected for that job. The department manager of the new store offered her a job as an Estee Lauder salesperson, and she accepted it.

Van Cleve started working at the King of Prussia store on February 19, 1996. Shortly after the store opened, she requested to be transferred to another cosmetics line so as not to work with the Counter Manager, a person she considered incompetent. The first position to become available was an Assistant Manager of the cosmetics department. On May 16, 1996, a woman named Christina Davidson was promoted to that job from Bobbi Brown Counter Manager. Plaintiff replaced Davidson as Bobbi Brown Counter Manager (a promotion from Estee Lauder salesperson) on the same date.

In late 1996, Van Cleve applied for a promotion to a new store in Hartford, Connecticut scheduled to open in mid–1997. She applied for the position of Cosmetics Department Manager. She had never held any department Manager or Assistant Manager position. On March 23,

---

**1.** Initial difficulties at both the Oregon and King of Prussia stores regarding work on the Sabbath were resolved, according to plaintiff.

*See* Def. Mot. at 2; Def. Ex. A at 77 (Van Cleve Dep.).

1997, Nordstrom Co–President Blake Nordstrom visited the King of Prussia store, and plaintiff took that opportunity to discuss with him her pending application for the Hartford job. *See* Def. Ex. A at 233–34. Plaintiff claims that during that conversation, Mr. Nordstrom told her that he would not support anyone who was not available to work on Saturday for a department manager position. *See id.*

In June 1997, Van Cleve received a phone call from the person who had been hired as the Hartford store's Cosmetics Department Manager. The new manager was seeking to interview Van Cleve for an Assistant Manager position. *See id.* at 233–34, 318–19. Plaintiff was surprised by this phone call, as she had not been notified that the Manager position had been filled and that her own application had thus been rejected. She expressed that surprise and had only a brief conversation with the department manager. *See id.* Later, the store manager of the Hartford store called to apologize for failing to notify her, and he asked if Van Cleve would be interested in being the manager of any other department. *See id.* at 319–21. Plaintiff replied that she would be interested in managing a department that was as active and as high-caliber as cosmetics. The store manager said that he would call her if there was anything like that available. She never heard from him again. *See id.* at 321.

On June 29, 1997, plaintiff resigned, effective July 10. She stated her reasons as follows: "Not recognized for what I bring to the company, and my 9 years of successful sales, promotion and growth of 5 companies, and above/beyond customer service. *Not* recognized for promotions!" Def. Ex. B3. Plaintiff testified at her de-

position that she decided to resign after finding out that she did not get the Hartford department manager job, but she did not want to leave until she achieved her personal goal of winning the best counter location in the store for Bobbi Brown. *See* Def. Ex. A at 255–57. On the day she found out that her line won the desired location, she resigned. *See id.* at 257.

This complaint contains claims of employment discrimination under Title VII and the Pennsylvania Human Relations Act (the PHRA) alleging that Nordstrom failed to accommodate Van Cleve's religious beliefs, failed to promote her, and constructively discharged her. The complaint also contains a Pennsylvania state law claim for intentional infliction of emotional distress. Nordstrom moves for dismissal on a number of grounds, which the court will discuss in turn.[2]

*Untimeliness of EEOC Administrative Filings*

■ Nordstrom argues that certain of plaintiff's Title VII claims are barred by her failure to exhaust her administrative remedies in a timely manner.[3] An employment discrimination plaintiff must file an EEOC Charge within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e). This filing is a prerequisite to a civil suit under Title VII. *See West v. Philadelphia Elec. Co.,* 45 F.3d 744, 754 (3d Cir.1995).

Van Cleve filed an EEOC Charge of Discrimination on January 6, 1997. *See* Def. Ex. D. In that Charge, she complained that she had been demoted from Estee Lauder Counter Manager to Estee Lauder Salesperson "on or about March 1, 1996" when she transferred from Portland to King of Prussia. In the box asking for

---

**2.** "[S]ummary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." *Kornegay v. Cottingham,* 120 F.3d 392, 395 (3d Cir.1997).

**3.** Nordstrom does not challenge the timeliness of Van Cleve's EEOC filing regarding her failure to be promoted to Assistant Manager of the cosmetics department at King of Prussia in May 1996.

the "date discrimination took place," Van Cleve stated that it began on February 16, 1996. *See id.*

■ Plaintiff knew well before she began work in February 1996 that she would not be a Counter Manager at King of Prussia. *See* Def. Ex. A at 40–41 (stating that she found out the previous October). Even calculating from her start date of February 16, though, the three-hundred-day deadline was December 13, 1996. Because plaintiff did not file her EEOC Charge until January 6, 1997, she missed the deadline for filing a complaint about not getting that job.[4] To the extent that her Title VII claim is based on her failure to be given the Estee Lauder Counter Manager job when she moved to the King of Prussia store, that claim will be dismissed.

■ Some time later, Van Cleve added additional allegations to her EEOC Charge. It is not clear when she first told the EEOC of the new charges; the only indication in the record is a letter dated May 6, 1998 from an EEOC investigator to Van Cleve that says, "Enclosed are three copies of the amended above referenced charge." The letter further asked Van Cleve to sign and date the copies and return them to the EEOC. *See* Def. Ex. F. Van Cleve signed the amended Charge, but did not date it. *See id.*

The added paragraphs relate the events surrounding Van Cleve's application to be the Cosmetics Department Manager at the

---

4. Plaintiff argues that Nordstrom's actions toward her constituted a continuing violation and that the allegation from February 1996 in her EEOC Charge was thus timely. The court rejects this argument because, quite simply, the allegations cannot be construed to constitute a continuing violation.

Although plaintiff alleges multiple incidents, a series of discrete and identifiable actions does not in and of itself constitute a continuing violation. The continuing violation theory was developed "[t]o accommodate . . . more indeterminate situations," as opposed to "more inflexible" cases in which "there is a discrete trigger event." *West*, 45 F.3d at 754. In *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476 (3d Cir.1997), the Third Circuit set forth factors relevant for determining whether plaintiff has demonstrated a continuing violation:

The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring . . . or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Id.* at 482, *quoting Berry v. Board of Supervisors of La. State Univ.*, 715 F.2d 971, 981 (5th Cir.1983). The *Rush* court went on to hold that the plaintiff's hostile environment sexual harassment claim constituted a continuing violation. In contrast, the court held that plaintiff's failure to promote and failure to train claims were not of a type that could be seen as part of a continuing violation; rather, they "addresse[d] discrete instances of alleged discrimination that are not susceptible to a continuing violation analysis." *Rush*, 113 F.3d at 483–84. *See also Narin v. Lower Merion Sch. Dist.*, 24 F.Supp.2d 465, 473 (E.D.Pa.1998) (stating that plaintiff's characterization of defendant's refusal to hire her for ten different teaching positions for which she applied as a continuing violation "demonstrates a misunderstanding" of continuing violation theory, because each of the alleged acts was a "separate and distinct employment decision" and thus each should have triggered her awareness); *Al–Salem v. Bucks County Water & Sewer Auth.*, Civ. A. No. 97–6843, 1999 WL 167729, at *4 (E.D.Pa. Mar.25, 1999) (reasoning that a failure to promote claim is not amenable to continuing violation analysis, because "an employee generally knows when he has been denied a promotion to which he believes himself entitled").

According to that sound reasoning, plaintiff's rejection for the Counter Manager position cannot be seen as part of a continuing violation; rather, it was a discrete trigger event. Subsequent events were not necessary to give a context to either the consequences of Nordstrom's decision—she did not get the job—or to see the event as an instance of allegedly actionable discrimination.

Hartford store. It says she applied for the job "in late 1996" and was told in March 1997 by Blake Nordstrom that she could not have that job because of her inability to work on Saturdays. The Charge also states that the Hartford Manager contacted her about an Assistant Manager position "a short time later," that they conducted a job interview over the phone, and that Van Cleve never heard back about the job. The Charge states, finally "By July 1997 I felt defeated and disappointed. I had no choice but to resign, as I knew I would not be promoted above my current position." Def. Ex F. The amendments thus pertain to plaintiff's current Title VII claim of failure to promote her to the Hartford job and her Title VII claim of constructive discharge.

Defendant argues that March 24, 1997, the date of Van Cleve's conversation with Blake Nordstrom, should be considered the date she found out that she did not receive the Hartford job. For the purposes of this motion, however, the court will consider the date of plaintiff's notification to be the later day that she received the phone call from the person who was hired for the job. She testified that she was surprised by that phone call, which indicates that she was receiving the news for the first time. *See* Def. Ex. A at 233–34, 318–19. That phone call came in June 1997, although the record does not indicate the specific date. Plaintiff resigned on June 29, 1997. Even calculated from that date, the failure to promote charge was untimely. Also, calculated from the date of her resignation, the constructive discharge claim was also untimely. Three hundred days from June 29 was April 26, 1998. Plaintiff did not add her new charges to the EEOC until at least May 6, 1998.[5]

*Untimeliness of PHRC Administrative Filings*

■ All of the PHRA claims are time-barred. The time for filing is 180 days. *See* 43 Pa.S. § 959(g). "If a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from judicial remedies under the PHRA." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir.1997). This requirement is interpreted strictly. *See id.* Therefore, the PHRA claims based on the same events as discussed above are even more untimely than under Title VII's EEOC 300–day filing requirement.

■ The one claim not discussed above is plaintiff's claim based on Nordstrom's failure to promote her to Assistant Manager of the King of Prussia department when she was instead promoted to Bobbi Brown Counter Manager in May 1996. For PHRA purposes, according to the 180–day requirement, that is also untimely. Plaintiff began her Bobbi Brown job on May 16, 1996, and that is the latest possible date from which to begin counting. The 180–day period expired November 12, 1996. Van Cleve filed her Charge on January 6, 1997. Therefore, that claim, along with the rest of plaintiff's PHRA claims, will be dismissed.[6]

---

**5.** Again, the new allegations cannot be characterized as part of a continuing violation because each rejection was a discrete trigger event that plaintiff could have recognized on its own.

Title VII's implementing regulations provide that "amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b). This provision cannot be applied to save the untimely added claims, even though the EEOC investigator called the additions amendments. The relating-back provision is properly used where a plaintiff seeks to amend the Charge by naming a new legal theory based on the same facts as reported in the original Charge, not where, as here, a plaintiff seeks to add entirely new facts that happened after the original Charge. *See, e.g., West v. First Pa. Bank*, Civ. A. No. 89–4730, 1990 WL 106858, at *5 (E.D.Pa. July 25, 1990), *citing Hicks v. ABT Assocs.*, 572 F.2d 960, 966 (3d Cir.1978). It does not make any sense to relate the added claims back to the original date of filing, because they had not even occurred yet at the time of the original filing.

**6.** Defendant advances another argument for dismissing plaintiff's PHRA claims. On June 7, 1999, the PHRC notified Van Cleve by

*Intentional Infliction of Emotional Distress.*

 In Pennsylvania, a cause of action for intentional infliction of emotional distress will lie only in rare circumstances: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Hunger v. Grand Central Sanitation*, 447 Pa.Super. 575, 670 A.2d 173, 177 (1996), *citing* Restatement (Second) of Torts § 46.

> The gravamen of the tort of intentional infliction of emotional distress is that the conduct complained of must be of an extreme or outrageous type. As a preliminary matter, it is for the court to determine if the defendant's conduct is so extreme as to permit recovery. Pennsylvania courts have been chary to declare conduct outrageous so as to permit recovery for intentional infliction of emotional distress and have allowed recovery only in limited circumstances where the conduct has been clearly outrageous. It has been said that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."

*Cox v. Keystone Carbon*, 861 F.2d 390, 395 (3d Cir.1988), *quoting Buczek v. First Nat'l Bank of Mifflintown*, 366 Pa.Super. 551, 531 A.2d 1122, 1125 (1987) (other citations omitted); *see also Hunger*, 670 A.2d at 177 ("Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!' "). The case law makes clear that "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox*, 861 F.2d at 395; *see also Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 754–55 (1998) (noting that recovery for this tort is reserved "for only the most clearly desperate and ultra extreme conduct" and holding that given that high

letter that the Commission had closed her case because "[y]ou failed to provide requested information or otherwise failed to cooperate with the PHRC to the extent that the Commission has been unable to resolve your charge." Def. Ex. I. Based on this, Nordstrom argues that plaintiff has not exhausted the administrative process and thus cannot avail herself of the PHRA's judicial remedies. There is some precedent in support of this argument. *See Lukus v. Westinghouse Elec. Corp.*, 276 Pa.Super. 232, 419 A.2d 431, 454 (1980) (dismissing plaintiff's PHRA claims for failure to exhaust the administrative process where plaintiff requested the PHRC not to proceed with its investigation, because the required invocation of PHRA procedures "entails more than the filing of a complaint; it includes the good faith use of the procedures provided for disposition of the complaint"); *Larmore v. RCP/JAS, Inc.*, Civ. A. No. 97–5330, 1998 WL 372647, at *3 (E.D.Pa. May 19, 1998) (holding that filing a complaint with the PHRC is not enough; rather, "a plaintiff must exhaust all remedies and comply with all procedural requirements under the PHRA prior to seeking redress in court"); *Ellis v. Mohenis Servs., Inc.*, Civ. A. No. 96–6307, 1997 WL 364468, at *2 (E.D.Pa. June 18,

1997) (citing *Lukus* and holding similarly based on similar facts); *see also McLaughlin v. State Sys. of Higher Educ.*, Civ. A. No. 97–1144, 1999 WL 239408, at *2 (E.D.Pa. Mar.31, 1999) (citing cases in support of its holding that "because failure to cooperate in an EEOC investigation, no less than failure to file with the administrative agency, serves to thwart the policy underlying the enactment of Title VII, a plaintiff whose case has been dismissed by the EEOC for lack of cooperation on her part may not bring the same Title VII claims in federal court" (internal quotes omitted)). *But see Melincoff v. East Norriton Physician Serv., Inc.*, Civ. A. No. 97–4554, 1998 WL 254971 (E.D.Pa. Apr. 20, 1998) (holding generally that plaintiff whose case EEOC dismissed for failure to cooperate was not barred from bringing Title VII claim, as agency sent right-to-sue letter in accordance with regulation). The present case may be distinguishable from the cited cases disallowing claims, because here plaintiff had already commenced suit at the time the PHRC closed her case. The court need not decide that issue, as the PHRA claims are being dismissed as untimely without regard to plaintiff's subsequent lack of cooperation with the Commission.

standard, the facts underlying a typical sexual harassment case, although "highly offensive and unacceptable," did not rise to the level that would allow recovery under "this most limited of torts").

When asked about the most outrageous thing that happened after she moved to the King of Prussia store, she answered, "not recognizing or recognizing the qualifications of someone, and not putting them in the appropriate positions? That, to me, is outrageous."[7] Def. Ex. A at 72. The court takes this to be a statement that her intentional infliction claim is based on the series of failures to promote her culminating in her decision to resign, the same allegations as her discrimination claims. A reasonable jury could not find that this complained-of conduct meets the high standard of outrageousness set by the Pennsylvania courts, and the claim must be dismissed.[8]

*Conclusion*

What remains of this case for trial is a single question: whether Nordstrom violated Title VII's prohibition against religious discrimination when it did not promote Van Cleve to Assistant Manager of the Cosmetics Department of the King of Prussia store in May 1996. The rest of the case will be dismissed. An appropriate Order follows.

***ORDER***

**AND NOW,** this day of September, 1999, upon consideration of Defendant's Motion for Summary Judgment, it is **OR-DERED** that the said motion is **GRANTED** as follows:

(1) The Title VII claim in Count I is **DISMISSED** except to the extent it is based on the failure to promote plaintiff to Assistant Manager of the Cosmetics Department of the King of Prussia store in May 1996.

(2) The PHRA claim in Count I is **DISMISSED**.

(3) Count II, the intentional infliction of emotional distress claim, is **DISMISSED**.

---

7. When asked to name the most outrageous thing that Nordstrom ever did to her, plaintiff first cited events that occurred in 1991 while she was working at the Portland, Oregon store: "The most outrageous thing they did to me was to put a buyer of shoes, buyer of shoes, a shoe buyer, into the department manager position of cosmetics—department manager of cosmetics. They made a buyer of shoes a department manager of cosmetics. She literally had no awareness." Def. Ex. A. at 66–67. Plaintiff went on to say that this shoe buyer/cosmetics manager "called me up and harassed me on the phone with no one else around and telling me that she was going to get me with this Saturday thing, and she was going to make sure that I didn't have a position." *Id.* at 67. Van Cleve then testified that a Seventh Day Adventists' rights group spoke to Nordstrom and made sure that plaintiff's religious rights were protected. She also testified that Nordstrom fired the individual: "They said that they had made an error, and they would never make an error like that again." *Id.* All events surrounding that person are well outside any statute of limitations implicated in this case, and they not part of the basis of plaintiff's discrimination claim. Therefore, the court will not consider this as a basis for her intentional infliction claim.

8. Plaintiff's reliance on *Durham Life Insurance Company v. Evans,* 166 F.3d 139 (3d Cir.1999), is misplaced. In *Durham,* the Third Circuit held that an "emotional distress award may be sustained under 42 U.S.C. § 1981a(b)(3), which authorizes compensatory damages under Title VII for 'emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.'" *Id.* at 161. While this holding may be applicable to the plaintiff's remaining Title VII claim, it does not affect the plaintiff's claims under Pennsylvania law. *See id.* at 161 n. 18.