662 A.2d 1089

**Joseph LONG, Appellant**

**v.**

**NORRITON HYDRAULICS, INC., Globe Hoist Company, Dresser-Wayne, Individually and/or T/A Wayne Division, Dresser Industries, Inc., and/or T/A Globe Hoist Company.**

Superior Court of Pennsylvania.

Argued March 14, 1995.

Filed June 27, 1995.

Reargument Denied Sept. 8, 1995.

Frank A. Rothermel, Philadelphia, for appellant.

Alan S. Gold, Elkins Park, for Norriton Hydraulics, appellee.

Kevin Maginnis, Philadelphia, for Globe Hoist, appellee.

Before HUDOCK, SAYLOR and HESTER, JJ.:

HESTER, Judge:

We hold that the trial court improperly ruled that the plaintiff in this products liability action voluntarily proceeded to face a known and obvious risk in using the product thereby absolving the defendants from legal liability for his injuries.

We therefore reverse the grant of summary judgment to defendants and remand for trial.

Appellant, Joseph Long, instituted this products liability action to recover for damages which he sustained when a hydraulic automotive lift suddenly shifted downward while he was working under the lift.[1] To avoid being struck by the device, appellant moved quickly from under it, slipped on hydraulic fluid which had leaked from the lift's cylinders, and sustained permanently disabling head and back injuries from the fall.

Defendants included the lift's designer and manufacturer, Globe Hoist Company and Dresser–Wayne individually and t/a Wayne Division, Dresser Industries, Inc. and t/a Globe Hoist Company, and the lift's seller and servicer, Norriton Hydraulics, Inc. After the close of discovery, the defendants, appellees, filed motions for summary judgment, arguing that since appellant was aware that the lift occasionally shifted downward, he assumed the risk of injury. The trial court agreed and granted summary judgment to appellees. This timely appeal followed.

Appellant's deposition indicates the following.[2] Appellant was an automotive mechanic employed by Purolator Courier ("Purolator") on the date of the accident, July 22, 1985. He was thirty-eight years old and the father of four children. Appellant had been employed by Purolator for eight years repairing its fleet of courier trucks and vans and primarily worked the third shift from 11:00 p.m. to 7:30 a.m. In addition to performing this night shift work, appellant owned and operated an automotive repair shop in Philadelphia.

Norriton sold three lifts, including the one which injured appellant, to Purolator in 1980. Two were used to lift smaller, lighter trucks and vans, and the third was a heavy-duty lift

1. Since this appeal involves the grant of summary judgment, these facts are based on a review of the record in the light most favorable to the appealing party.

2. As moving parties in this summary judgment proceeding, appellees properly relied solely upon appellant's deposition in seeking summary judgment.

which serviced heavier fleet vehicles. After installation, all three lifts started to leak hydraulic fluid at the base of the cylinders. Appellant described this leakage problem as constant. Appellant and his fellow mechanics would bring this to Purolator's attention, and Purolator regularly called in Norriton to repair the lifts.

In addition to the leaking fluid problem, the two light-duty lifts sporadically and without warning, shift upward or downward. This happened "[q]uite a few times." Deposition of Joseph P. Long, 1/23/89, at 41. Appellant described this problem as one where the lift would "jump" either up or down one to three inches and would make a banging sound. *Id.* Every time this happened to appellant, he reported it to his employer so that it would be repaired. The lift never had come down while he was under it, as it did on July 22, 1985. Appellant indicated that while the shifting happened frequently enough that he was on the "look out" for it, it never happened every day. *Id.* The majority of the time, the lift would jump immediately after the truck or van had been raised. The safety pins that were designed to stop the lift from shifting downward either had broken off or did not work. *Id.* at 55. Appellant testified that he continued to work with the lifts because they were necessary to the performance of his job.

On the night in question, appellant was working alone, drove a truck onto one of the light-duty lifts, and began to work underneath the truck. Approximately fifteen to thirty minutes later, the lift dropped. When appellant moved quickly to avoid being struck on the head with the truck, he slipped on hydraulic fluid, landing on his back and the back of his head. The lift made a banging sound similar to the sounds made when it shifted before, only the sound was louder. *Id.* at 136. This time, the lift dropped significantly more than one to three inches.

Appellant immediately was taken to the hospital by a Purolator dispatcher working in the office and was treated, prescribed codeine for pain, and released. However, that night and the next day, appellant was dazed, confused, and unable to

remember how he was transported home. He immediately started to treat with physicians, who advised him that he no longer could lift heavy objects. He never returned to work at Purolator, was forced to sell his automotive repair business, and has experienced consistent pain and depression since the accident. He now occasionally drives a truck for a construction company when that work is available and he is able to work. He also does indoor painting with his brother.

Based on this evidence, the trial court granted summary judgment to appellees on the basis of assumption of the risk. The narrow issue before this court is whether summary judgment was granted properly.[3] In two cases, our Supreme Court has affirmed a trial court's determination that the plaintiff voluntarily proceeded in the face of a known risk and absolved the defendant from responsibility for the injuries sustained. *Howell v. Clyde*, 533 Pa. 151, 620 A.2d 1107 (1993) (four justices concurring in this portion of holding); *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983). An incisive reading of those cases, including the portion of *Howell* commanding a majority, indicates the following. The question of whether the plaintiff has assumed the risk of his injuries should not be decided as a matter of law except where it is beyond question that the plaintiff voluntarily and knowingly proceeded in the face of an obvious and dangerous condition and thereby must be viewed as relieving the defendant of responsibility for his injuries.

In *Carrender*, an invitee parked on the landowner's parking lot on a sheet of ice even though the rest of the parking lot had been cleared of snow and ice. The invitee wore a prosthesis, became aware of the ice before exiting her car, and also was aware that maneuvering on ice was especially difficult for her. She slipped and fell on the ice when re-entering her car and instituted the action against the landowner. The

3. Appellant argues that assumption of the risk is not a viable defense in Pennsylvania. However, assumption of the risk is a viable defense according to four of our seven justices. *See Howell v. Clyde*, 533 Pa. 151, 620 A.2d 1107 (1993) (four justices agreeing that the trial court properly granted a compulsory nonsuit to defendant based on voluntary assumption of the risk). Thus, this contention must be rejected.

Court indicated that a landowner owes no duty to an invitee who proceeds to face an obvious and avoidable dangerous condition of the land since, by his conduct, the invitee has agreed to accept the risk and to undertake to look out for himself. Similarly, in *Howell,* a licensee of the landowner was socializing with the landowner and asked to ignite a home-made fireworks cannon. He injured himself in the process.

Thus, in both cases, the plaintiffs proceeded voluntarily. The plaintiff in *Carrender* easily could have parked in a non-icy area. The plaintiff in *Howell* did not have to engage in the recreational activity of firing the cannon. Furthermore, the risks at issue in both cases were dangerous, known, and obvious. Ice always is slippery, and a person walking on ice always runs the risk of slipping and falling. Fireworks always explode, and a person always encounters a risk of injury from that explosion when he uses fireworks. *See also Kotovsky v. Ski Liberty Operating Corp.,* 412 Pa.Super. 442, 603 A.2d 663 (1992) (when one voluntarily engages in the recreational sport of skiing which always carries an extremely high risk of falling, one voluntarily assumes the risk of injuries from a fall).

Thus, as Justices Flaherty and Cappy noted in *Howell,* the problems in resolving the assumption of the risk issue as a matter of law is in determining whether the plaintiff actually knew of the risk and whether his actions were voluntarily and deliberately taken. There was no question in either *Howell* and *Carrender* that this was the case.

The evidence here, however, was vastly different. First, there is a question as to whether the risk was faced voluntarily. Appellant used the lift where he worked and needed it to perform his job. Thus, there is a question of whether appellant had a choice in encountering the risk.

Second, there is a question of whether the risk was a known or obvious risk. The lifts shifted sporadically. Appellant complained immediately to his employer if he experienced any problems, and he knew that the lifts regularly were repaired. The majority of the time, the shifting occurred immediately

after the lift was elevated, and appellant stated that he was on the look out or in other words, took care to avoid the problem. Appellant had been working on the lift fifteen to thirty minutes when the accident occurred. The lifts usually shifted only one to three inches. Appellant stated that the lift jumped almost a foot on the night in question. Appellant did indicate that the shifting problem occurred quite a few times. However, this was over the five years he worked with the lifts. Thus, while ice always is slippery and fireworks always explode, these devices did not always shift downward.

The trial court seemed to confuse two separate problems with the lifts. These are the leaking-fluid problem and the shifting problem. There is no question that appellant testified that the lifts constantly leaked fluid. However, this was not true of the shifting problem. Furthermore, there was no evidence linking the two defects, and in fact, the evidence indicates that they probably were not related. Appellant testified that all three lifts constantly leaked fluid, but only the two light-duty lifts had the shifting problem.

In light of the evidence presented, there is a question as to whether appellant voluntarily and knowingly assumed the risk of his injuries, and summary judgment improperly was granted.

Order reversed and case remanded.