665 A.2d 4

**Stanley STRUBLE, III**

v.

**VALLEY FORGE MILITARY ACADEMY, Appellant.**

Superior Court of Pennsylvania.

Argued May 24, 1995.

Filed Sept. 21, 1995.

226

Charles W. Craven, Philadelphia, for appellant.

Harry M. Roth & A. Roy DeCaro, Philadelphia, for appellee.

Before CIRILLO, HOFFMAN and HESTER, JJ.

HESTER, Judge:

Valley Forge Military Academy (sometimes referred to as the "Academy") appeals following a jury's determination that it is partially liable for injuries sustained by Stanley Struble, III, appellee, when he fired a ceremonial cannon during an Academy event. We reject appellant's claim that appellee assumed the risk of his injuries as a matter of law. We also conclude that once the trial court determined that appellant was not entitled to a compulsory non-suit on the basis of that doctrine, it correctly refused to charge the jury on the doctrine of assumption of the risk in this negligence action. We therefore affirm.

Appellee instituted this negligence action to recover damages for injuries sustained on April 7, 1991. At trial, his testimony was as follows. Appellee, eighteen years old at the time, was attending the Academy. Two years prior to the incident, he became involved in the motor pool, which is the student organization responsible for firing the school cannon at dinner formation, football games, and parades.

Appellee described the cannon as a "toy cannon" two feet in length and weighing between ten to fifteen pounds. Reproduced record ("R.R.") at 49a. The cannon works by sliding a door on the barrel, which is brass, loading the barrel with blank cartridges, and re-closing the door. Then, the operator must pull a lanyard, which is a round string with knots about the thickness of a shoelace that has a wooden ball at the end.

The cannon was designed to set off blanks and was "mainly for the noise." *Id.* at 50a. Nothing was to be projected from the barrel other than smoke and a small flame visible only at night. In appellee's experience, the cannon never had fired unless he first pulled the lanyard vigorously. He had used the cannon over 200 times prior to the April 1991 incident.

The blank cartridges were kept in Lee Hall and were available as needed. At times, no officer was present in Lee Hall when appellee arrived, and he would remove cartridges from their location in a closet without anyone knowing. Furthermore, unlike firearms, students were permitted to keep the cannon in their rooms.

Appellee had been trained to use the cannon by another student. There were no safety instructions, and no one ever warned or alerted him against a hazard in the event the lanyard became stuck during firing. The only trouble he experienced with the cannon prior to the incident was that it occasionally would not fire after the lanyard was pulled. Appellee then would pull the lanyard vigorously a second time, and the cannon would discharge.

On April 7, 1991, the Academy had scheduled a parade, and appellee was in charge of preparing the cannon. Appellee loaded the cannon and began to untangle the lanyard, which had become wedged between the wheel and body of the cannon. While he was attempting to free the lanyard from this position, the cannon discharged. The cannon never had discharged prior to that time with such little force applied to the lanyard.

Appellee testified that he knew better than to stand in front of the muzzle while firing the cannon and that his leg was approximately six inches off to the side of the muzzle and not directly in front of it when he was freeing the lanyard. A segment of appellee's calf was torn off, his bone was exposed, he was taken to the hospital where he spent three and one-half weeks, and he has undergone two operations. He remained on crutches for two months and was not able to work that summer, losing approximately $300 to $400 a week based upon

his prior summer's earnings. He has scars on his calf and his hip where doctors took skin grafts used in repairing the calf. The injuries to the calf have affected his ability to jump and walk for long distances. Appellee incurred $76,695.82 in medical bills.

Following appellee's testimony, appellant moved for a compulsory non-suit based on its position that appellee had voluntarily assumed the risk of his injuries. Non-suit was denied. At the close of the evidence, appellant requested a charge on the doctrine of assumption of the risk. The trial court concluded that a charge on comparative negligence was the only instruction necessary, which was submitted to the jury on special interrogatories. The jury determined that appellant was negligent and its negligence was a substantial factor in causing appellee's harm, that appellee was comparatively negligent and his comparative negligence was a substantial factor in causing the harm, and that appellant's proportional negligence was sixty percent. The jury awarded $200,000 in damages. After the trial court denied appellant's post-trial motions, judgment was entered. This appeal followed.

 Appellant first contends that it is entitled to judgment notwithstanding the verdict due to the fact that appellee voluntarily assumed the risk of his injuries. When reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, "[t]he evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Moure v. Raeuchle,* 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992). We should not reach a decision based on how we would have voted but on the facts as presented in light of the jury's determinations. *Id.* A judgment n.o.v. is proper if the movant is entitled to judgment as a matter of law or if the evidence was such that no two reasonable minds could disagree that the verdict was improper. *Id.; Wasserman v. Fifth & Reed Hospital,* 442 Pa.Super. 563, 569, 660 A.2d 600, 604 (1995).

■ In two cases, our Supreme Court has affirmed a trial court's determination that as a matter of law, the plaintiff voluntarily proceeded in the face of a known risk and absolved the defendant from his duty to protect against the injuries sustained. *Howell v. Clyde,* 533 Pa. 151, 620 A.2d 1107 (1993) (four justices concurring in this portion of holding); *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983). However, a plaintiff will not be precluded from recovering except where it is *beyond question* that he voluntarily and knowingly proceeded in the face of an obvious and dangerous condition and thereby must be viewed as relieving the defendant of responsibility for his injuries. *Long v. Norriton Hydraulics, Inc.,* 443 Pa.Super. 532, 662 A.2d 1089 (1995).

In *Carrender,* an invitee parked on a sheet of ice even though the rest of the parking lot was clear. The invitee became aware of the ice before exiting her car and slipped when she re-entered her car. The Court indicated that a landowner owes no duty to an invitee who proceeds to face an obvious and avoidable dangerous condition of the land since, by his conduct, the invitee has agreed to accept the risk and to undertake to look out for himself. Similarly, in *Howell,* a licensee of the landowner was socializing with the landowner and asked to ignite a homemade cannon that shot fireworks. He injured himself in the process.

There was no question that the risks at issue in both cases were dangerous, known, and obvious and that the plaintiff voluntarily proceeded to encounter them. *See also Kotovsky v. Ski Liberty Operating Corp.,* 412 Pa.Super. 442, 603 A.2d 663 (1992) (when one skis, which carries the near certainty of a fall, one voluntarily assumes the risk of injuries from a fall).

■ However, in the within situation, the evidence as to appellee's knowledge was vastly different. He stated that the cannon, armed with blanks, never fired unless he had applied significantly more pressure on the lanyard than was applied when he attempted to untangle it. Second, only smoke and a small flame, visible only at night, came from the muzzle. Thus, appellee testified, he did not know that he could injure

himself if he kept his leg more than six inches to the side of the muzzle, which is where it was located at the time of the accident.

Appellant claims that the reasoning of *Howell* is directly applicable since both cases involve cannons. We cannot agree. *Howell* involved a homemade cannon that shot fireworks. The cannon in the present case was a toy, ceremonial cannon, which was used to fire blanks. Furthermore, the Academy's treatment of the cannon could not have alerted appellee to its potential danger. No one supervised his training on or firing of the cannon,[1] and students were permitted to keep the cannon in their rooms. The Academy's treatment of real firearms included faculty training and supervision of use of the firearms.

In this case, appellee never observed anything being projected from the cannon other than a small flame, and he testified that he was not aware that the danger zone from the muzzle extended laterally more than six inches. We are not dealing with fireworks in this case but a toy cannon shooting blanks.

It is impossible to accept appellant's position that appellee knew that "the firing of the ceremonial cannon was dangerous and could injure anyone in close proximity," appellant's brief at 20, when the evidence included the following factors. Appellee had used the cannon over 200 times during the previous two years without incident, the only projectile from the cannon was smoke and a small flame, and cadets were permitted to take the cannon to their rooms, to use it without adult supervision, and to gain unlimited access to the blank cartridges. Finally, appellee was trained in using the small, ceremonial cannon by another student.

This type of lax supervision over use of the cannon, compared with the tight controls the Academy exercised over use of firearms, would not alert someone to the fact that the

1. Appellant presented evidence to the contrary on these two points; however, appellee testified that he was trained by a student and often fired the cannon without faculty supervision. In light of our standard of review, we must accept appellee's testimony on these points.

cannon would injure a body part not within the range of the small flame. Thus, the evidence was not such that no two reasonable minds would differ that appellee knew he would be injured when his body was not directly in front of the muzzle while he attempted to free the lanyard. *See and compare Long v. Norriton Hydraulics, Inc., supra* (where product exhibited dangerous tendencies sporadically and under conditions different from those involved in the accident, trial court improperly ruled as a matter of law that plaintiff assumed risk of his injuries), *with Malinder v. Jenkins Elevator & Machine Co.,* 371 Pa.Super. 414, 538 A.2d 509 (1988) (defendant knew he ran risk of being struck by elevator when he placed his head in elevator shaft prior to looking); *see also Hardy v. Southland Corp.,* 435 Pa.Super. 237, 645 A.2d 839 (1994) (plaintiff must actually perceive risk and then voluntarily proceed to encounter it before compulsory non-suit based on assumption of the risk may be granted in favor of defendant).

■ Appellant also argues that the assumption of the risk defense applies here because appellee was exercising sole control over the instrumentality of harm at the time of the accident. Application of the doctrine of assumption of the risk does not depend upon whether a plaintiff is exercising control over the instrumentality of injury. Indeed, "control" is not a factor in the applicable test.

Finally, appellant suggests that we should disbelieve appellee's self-serving testimony that he did not know that the blast area extended over six inches laterally from the muzzle and did not know the cannon could be fired with slight force on the lanyard. Appellant correctly notes that we did this with plaintiff's testimony in *Malinder.* However, the plaintiff in *Malinder* testified that he did not know he could be struck by an elevator if he did not look in the elevator shaft prior to placing his head in it. This is inherently incredible, and the equivalent of stating that you do not know that ice is slippery or that you might fall from skiing.

Herein, appellee testified that the only visible projectile from the cannon during firing was a small flame, visible only

at night, and smoke. Additionally, this was a toy, ceremonial cannon which fired blanks and which was kept in students' bedrooms. Thus, we find perfectly believable his testimony that he did not realize that he could be injured while his body was over six inches away from and to the side of the muzzle.

Appellant's final argument is that it is entitled to a new trial because the jury was not charged on the doctrine of assumption of the risk. The trial court charged the jury on principles of comparative negligence, and as noted, the jury found appellant comparatively negligent in causing his injuries. The trial court, after concluding that appellant was not entitled to a compulsory non-suit on the doctrine of assumption of the risk, determined that it should charge only on comparative negligence principles. This ruling was well-reasoned and correct.

In our judgment, the within situation is controlled by *Howell v. Clyde, supra.* A study of the opinions of the Pennsylvania Supreme Court in that litigation leads to the conclusion that the question of whether a litigant has assumed the risk is a question of law and not a matter for jury determination. We further conclude that once the trial court decides that assumption of the risk is not the basis for a compulsory nonsuit, the jury is to be charged only on comparative negligence.

Our conclusion is buttressed by the Commonwealth Court's recent decision in *Giosa v. School District of Philadelphia*, 157 Pa.Cmwlth. 489, 630 A.2d 511 (1993), wherein it ruled that since the jury was charged on comparative negligence, it properly was not charged on the doctrine of assumption of the risk and that issue was not submitted to the jury.

Judgment of sentence affirmed.