**Barrett v. Fredavid Builders Inc.**

*W. James Jakobowski,* for plaintiffs.
*Elizabeth S. Walker* and *Gregory E. Cassimatis,* for defendants.

SHEPPARD, JR., *J.,* January 30, 1996—This opinion is submitted in support of this court's October 31, 1995 order granting defendants' motion for summary judgment.

## PROCEDURAL HISTORY

Plaintiffs brought this action seeking to recover for injuries sustained by the plaintiff, Edward Barrett, arising from a slip and fall at a construction site.

On September 29, 1995, this court denied defendants' motion for summary judgment pending the completion of discovery. Defendants filed for reconsideration and summary judgment was granted on October 31, 1995. Plaintiffs timely appeal.

## FACTS

On October 25, 1990 Barrett fell and was injured while working at a construction site. Barrett was employed by the Premier Insulation Company and was installing insulation at "lot no. 16 Model E—bi-level" in a new housing project located at Bentley and Philmont Avenues in Philadelphia, Pennsylvania. Defendant, Fredavid Builders Inc., was the general contractor in charge of the site. Defendant, Safeguard Roofing Systems Inc., was the subcontractor installing siding on the housing units.

During construction of these homes, only one contractor was permitted on the premises at a given time. Prior to Barrett's fall, Safeguard's employees had been installing siding and had piled their siding and siding components in the garage of lot 16. Safeguard failed

to remove its materials and the general contractor, Fredavid Builders, failed to inspect the garage before Barrett arrived. When Barrett arrived to find the garage cluttered with siding and siding components, he decided to clear the materials aside and proceed with his work. Barrett works on stilts while installing insulation. Fearing a fall while balanced on his stilts, Barrett cleared a horseshoe shaped path around the interior of the garage. Unfortunately, he stepped on siding materials while on his stilts and fell, resulting in his injuries.

## STANDARD OF REVIEW

Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b), 42 Pa.C.S. The Superior Court has articulated the following standard for granting summary judgment:

"Summary judgment may be entered only in those cases which are clear and free from doubt. . . . In passing on a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party . . . . It is not the court's function to decide issues of fact but solely to determine if there is an issue of fact to be tried. . . . Any doubt must be resolved against the moving party. . . . The court, in ruling on a motion for summary judgment, must ignore controverted facts contained in the pleadings. . . . The court must restrict its review to the material authorized by Rule 1035 to be filed in support of and in opposition to the motion for summary judgment and *only* those allegations in the pleadings that are uncontroverted." *Krause v. Great Lakes Holdings Inc.,* 387 Pa. Super. 56, 63, 563 A.2d 1182, 1185 (1989), *allocatur denied,* 524 Pa. 629, 574 A.2d 70 (1990)

(quoting *Washington Federal Savings and Loan Association v. Stein,* 357 Pa. Super. 286, 288-89, 515 A.2d 980, 981 (1986)). (citations omitted) (emphasis in original)

## DISCUSSION

### *The Grant of Defendant's Motion for Summary Judgment Was Appropriate*

There is no dispute that Barrett was a business invitee[1] and, as such, was entitled to have the highest degree of care exercised toward him by Fredavid Builders. *Lonsdale v. Joseph Horne Company,* 403 Pa. Super. 12, 18, 587 A.2d 810, 813 (1991) (citing *Crotty v. Reading Industries Inc.,* 237 Pa. Super. 1, 8, 345 A.2d 259, 262 (1975). In Pennsylvania, the bases for the liability of possessors of land to invitees is well settled.[2]

Under the facts present here, this court holds that the "modified" assumption of risk doctrine adopted by our Supreme Court effectively discharged the defendant's duty, in that the plaintiff voluntarily encountered a known and obvious risk. See *Howell v. Clyde,* 533

---

1. A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with the business dealings of the possessor of the land. Restatement (Second) of Torts §332(3).

2. A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts §343.

Pa. 151, 620 A.2d 1107 (1993). Although the question of whether the danger arising from a condition on the possessor's land was known or obvious to the invitee is usually a question for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion. *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983). In *Carrender,* the plaintiff sought to recover for injuries sustained when she slipped and fell on a patch of ice in the parking lot of her doctor's office. *Id.* In finding for the defendant, the court addressed the relationship between the assumption of risk doctrine and the rule that the possessor of land is not liable to his invitees for obvious dangers.

"When an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of risk operates merely as a counterpart to the possessor's lack of duty to protect the invitee from those risks. [citations omitted] By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and undertake to look out for himself. [citations omitted] It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. *Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers. " Id.* at 187-88, 469 A.2d at 125. (citations omitted) (emphasis added)

In finding for defendant, the *Carrender* court relied on the plaintiff's testimony that the ice (danger) was obvious to the reasonably attentive invitee and that the plaintiff herself was aware of the ice and appreciated the risk of traversing it. *Id.* at 186, 469 A.2d at 124.

Further, the court concluded that the defendant could reasonably expect that invitees would recognize the danger presented by the ice and park in another, ice-free space. *Id.* "[T]he legal consequence of the invitee's assumption of a known and avoidable risk is that the possessor of land is relieved of a duty of care to the invitee." *Id.* at 188-89, 469 A.2d at 125 (citing Schwartz, Comparative Negligence §9.4 at 168-69 (1974)).[3]

The viability of assumption of risk as a defense was discussed thoroughly in *Howell v. Clyde, supra.* In *Howell,* the plaintiff was injured when a fireworks cannon exploded during a party. *Id.* Plaintiff brought an action against the host of the party and the trial court granted an involuntary nonsuit in favor of the defendant. *Id.* The Superior Court reversed and remanded for a new trial. *Id.* In reinstating the nonsuit, the Supreme Court pronounced that while some forms of assumption of risk should be abolished,[4] assumption of risk remains a viable defense in a "modified form." *Howell, supra* at 161, 620 A.2d at 1112. Specifically, to the extent that an assumption of risk analysis is appropriate, it should be applied by the court as a part of the duty analysis, and not as a question for the jury. *Id.* at 162, 620 A.2d at 1112-13.

Thus, where a plaintiff has knowingly and voluntarily undertaken an activity which he knows to be hazardous

---

3. In his concurring opinion, Mr. Justice Flaherty emphasized that "plaintiff is barred from recovery because the possessor of land owed no duty to protect from an obvious hazard, *not* because plaintiff assumed the risk." *Carrender v. Fitterer,* 503 Pa. 178, 189, 469 A.2d 120, 126 (1983). (emphasis in original)

4. "One's recovery, under the comparative negligence act, is to be reduced by the amount of his own negligence so long as it does not exceed that of the defendant; it is not to be barred, as in assumption of risk type 4, by the mere existence of any amount of negligence. Assumption of risk type 4, therefore, should be abolished." *Howell v. Clyde,* 533 Pa. 151, 161, 620 A.2d 1107, 1112 (1993).

in ways which subsequently lead to injury, the choice to undertake those activities *may* or *may not* be negligent. *Id.* at 161, 620 A.2d at 1112. Negligence is inapposite to a court's analysis, the operative fact is the "voluntary choice to encounter the risk." *Id.* The *Howell* court stated:

"The theoretical underpinning of these types of assumption of risk is that as a matter of public policy one who chooses to take risks will not then be heard later to complain that he was injured by the risks he chose to take and will not be permitted to seek money damages from those who might otherwise have been liable. This policy is distinct from the public policy underlying negligence recovery, which is, in essence, that recovery should be permitted on the basis of fault." *Id.* at 161-62, 620 A.2d at 1112.

Finally, the court cautioned that under this approach "the court may determine that no duty exists *only* if reasonable minds could not disagree that the plaintiff deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury." *Id.* at 162, 620 A.2d 1113. In such a case, the court would determine that as a matter of law, the defendant owed the plaintiff no duty of care. *Id.* at 162-63, 620 A.2d at 1113.

The Superior Court applied *Howell's* reasoning in *Long v. Norriton Hydraulics Inc.*, 443 Pa. Super. 532, 662 A.2d 1089 (1995). In *Long*, the plaintiff was an automobile mechanic who was injured when a hydraulic lift suddenly shifted downward while he was working under it, causing him to fall and sustain injuries. *Id.* The trial court had granted summary judgment for the defendants. *Id.* at 536, 662 A.2d at 1091. Looking to *Howell* for guidance, the court stated that "the problems in resolving the assumption of the risk issue as a matter of law is in determining whether the plaintiff actually knew of the risk and whether his actions were voluntarily

and deliberately taken." *Long, supra* at 537, 662 A.2d at 1091. The court reversed, concluding that there was a question whether the risk was known and obvious to the plaintiff. *Id.* First, the plaintiff needed the lift to perform his job. Second, there was evidence that the lift shifted sporadically over a five year period and was regularly repaired. *Id.* Additionally, the shifting usually occurred immediately after the lift was elevated. *Id.* In this instance, the lift shifted 15 to 30 minutes after elevation. *Id.* The court, referring to *Carrender, supra,* and *Howell, supra,* reasoned, "[t]hus, while ice always is slippery and fireworks always explode, these devices [lifts] did not always shift downward." *Long, supra* at 538, 662 A.2d at 1091.

More recently, the Superior Court came to a similar conclusion in *Struble v. Valley Forge Military Academy,* 445 Pa. Super. 224, 665 A.2d 4 (1995). There, a student sued the academy for injuries resulting from the accidental firing of a toy cannon owned by the academy. The academy appealed a jury finding for the plaintiff. As before, the court relied on the *Howell* test.[5] *Id.* at 229, 665 A.2d at 6. In affirming, the court stressed that the plaintiff did not have sufficient knowledge indicating that he voluntarily undertook a known and dangerous risk.[6]

Here, both plaintiffs and defendants focus on the defendants' respective duties to Barrett, a subcontracting

---

5. The threshold question is whether or not the plaintiff voluntarily proceeded in the face of a known risk and thereby absolved the defendant from a duty to protect against the injuries sustained. *Struble v. Valley Forge Military Academy,* 445 Pa. Super. 224, 229, 665 A.2d 4, 6 (1995).

6. "Thus, the evidence was not such that no two reasonable minds would differ that [plaintiff] knew he would be injured when his body was not directly in front of the muzzle while he attempted to free the lanyard." *Struble, supra* at 230, 665 A.2d at 7.

insulator. This court agrees that, initially, as a business invitee, Barrett is to be afforded the highest duty of care that can be imposed on a possessor of land (Fredavid Builders). Also, Safeguard, as the tradesmen who occupied lot 16 just prior to Barrett, had a duty to ensure that its materials were removed from harm's way. However, both defendants were *obviated of their duties* when Barrett voluntarily encountered a known risk. See *Howell, supra,* at 158, 620 A.2d at 1110.

At his deposition, Barrett testified that he had been working as an insulator for Premier Insulation for four years. During Barrett's first month on the job, he was trained in the use of stilts.[7] Barrett was instructed that the work areas were supposed to be clear of debris and, in the event of obstructions, Barrett was to inform the job supervisor or his immediate supervisor at Premier. On the day of his accident, Barrett arrived at lot 16 to find "a good percentage" of the garage floor covered with debris. Instead of looking for the job foreman or calling his supervisor for assistance, Barrett removed his stilts and cleared a horseshoe shaped walking path around the interior of the one-car garage.

"By Mr. Cassimatis:

"Q. Is there a particular reason that you cleaned up the job site in the garage to make this horseshoe walkway?

"A. To prevent an accident.

"Q. What type of accident did you envision happening?

"A. You could fall on anything. Falls, slips, you know.

"Q. You were aware that even though the stilts—they had rubber treads on them; is that correct?

---

7. The day of the accident, Barrett's stilts elevated him approximately two feet off the ground.

"A. Yes.

"Q. You were aware then, that even though they had these rubber treads on them, that if you stepped on something with the stilts that would give in any fashion, that you could fall over; is that correct?

"A. Yes.

"Q. And that's why you moved the items that you did to make this horseshoe walkway?" (Plaintiff's deposition p. 41, lines 19-24, p. 42, lines 1-15.)

Thus, as Barrett's deposition testimony indicates, he was aware of the risk attendant to walking on stilts in an area where a "good percentage" of the floor is covered with debris. Confronted with this risk, he voluntarily attempted to make the area safe. Unfortunately, he fell and was injured.

The facts presented are analogous to those in *Carrender, supra,* and *Howell, supra,* in that the danger was *present and unchanging* from the moment plaintiff encountered it until the event resulting in injury. Further, plaintiff was cognizant of, and understood the danger. Just as ice is always slippery and fireworks always explode, this court finds that vinyl siding strewn about a garage floor is always hazardous to an individual walking on two foot stilts. This court therefore submits that, as a matter law, plaintiff voluntarily undertook a known and dangerous risk and thereby obviated any duty on the part of the defendants.

## CONCLUSION

For the foregoing reasons, this court respectfully submits that the order granting defendants' motion for summary judgment should be affirmed.