J-A12043-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| BERWIND ROW, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | |
| Appellant | |
| | |
| v. | |
| | |
| TINA M. TEETER | |
| | |
| Appellee | No. 1706 WDA 2016 |

Appeal from the Order August 19, 2016
In the Court of Common Pleas of Blair County
Civil Division at No(s): 2014 GN 1930

BEFORE: OLSON, SOLANO and RANSOM, JJ.

MEMORANDUM BY OLSON, J.: FILED OCTOBER 10, 2017

Appellant, Berwind Row, LLC, appeals, by permission, from the interlocutory order entered on August 19, 2016, denying its motion for summary judgment. We affirm.

On June 14, 2014, Tina M. Teeter (hereinafter "Ms. Teeter") filed a complaint against Appellant. Within the complaint, Ms. Teeter averred that, in October 2013, her daughter lived at 616 Berwind Road, in Hollidaysburg, Pennsylvania.[1] Ms. Teeter's Complaint, 6/14/14, at ¶ 6. Ms. Teeter averred

_____

[1] Ms. Teeter's complaint incorrectly identified the property's address. See Ms. Teeter's Complaint, 6/14/14, at ¶ 6. However, it is uncontroverted that the property at issue is located at 616 Berwind Road, Hollidaysburg, Pennsylvania. See Appellant's Answer, 10/24/14, at ¶ 6.

that her daughter was the lessee of the premises and that Appellant was the owner and lessor of the property. Id. at ¶¶ 6 and 8.

According to the complaint, on October 21, 2013, Ms. Teeter was visiting her daughter when she tripped and fell on stairs at the property, injuring herself. Id. at ¶¶ 8 and 10-11. Ms. Teeter alleged that: the stairs upon which she fell were "steep and dangerous [] with narrow tread depth and over-hanging treads that do not conform to regular construction standards;" Appellant knew of the dangerous condition that existed upon the premises; and, Appellant was negligent because it "failed to take any steps to eliminate the hazard, reduce its danger to invitees, or otherwise warn users [] of its dangerous, hazardous, unsafe[,] and defective condition." Id. at ¶¶ 9 and 13-14.

On October 24, 2014, Appellant answered the complaint and admitted that, at the time of the accident, it owned the property in question and it leased the property to Ms. Teeter's daughter, Chasity Markle, "who utilized the property as her own private and personal residence." Appellant's Answer and New Matter, 10/24/14, at ¶ 6. However, Appellant denied that it was liable for Ms. Teeter's injuries. Id. at "Wherefore" Clause.

Further, within Appellant's new matter, Appellant claimed that: it was an owner out of possession, occupancy, or control; if a dangerous condition existed on the land, the condition was open and obvious; under the lease agreement, it was the tenant's duty to "maintain the lease premises in good repair and to 'report to [Appellant] any . . . bad steps or other dangerous

- 2 -

conditions that may exist inside or outside of the unit;'" and, "[a]t no time did the tenant ever provide any notice of any defective condition" regarding the stairs. Id. at ¶¶ 18-24.

On December 20, 2016, Appellant filed a motion for summary judgment and claimed that, as a matter of law, Ms. Teeter could not establish that Appellant had a duty to warn or otherwise protect Ms. Teeter against the dangerous condition. Appellant's Motion for Summary Judgment, 12/20/16, at ¶ 10. In particular, Appellant claimed that Ms. Markle "was a tenant in exclusive possession and control of the subject premises pursuant to [the] lease agreement." Id. at ¶¶ 7-10. Appellant claimed that, as a "landlord out of possession of the subject premises," it was not liable "to [its] lessee, or others on the land with the consent of the lessee, [for] any dangerous condition, whether natural or artificial, which existed when the lessee took possession and which the lessee knew or should have known, by a reasonable inspection, existed." Appellant's Brief in Support of Summary Judgment Motion, 12/20/16, at 5, quoting Parquet v. Blahunka, 84 A.2d 187 (Pa. 1951).

Second, Appellant claimed, Ms. Teeter admitted that she fell on the front steps of the premises, that she was aware the front steps were dangerous, and that she could have avoided the dangerous front stairs by utilizing the back door to the property. Appellant's Motion for Summary Judgment, 12/20/16, at ¶¶ 15-18. Therefore, Appellant claimed that Ms.

Teeter assumed the risk of her injury. Appellant's Brief in Support of Summary Judgment Motion, 12/20/16, at 11.

Finally, Appellant claimed that it was entitled to summary judgment because Ms. Teeter "has been unable to establish the identity of any defective condition that allegedly caused her fall." Appellant's Motion for Summary Judgment, 12/20/16, at ¶ 11.

Appellant supported its summary judgment motion with documents that included Ms. Teeter's answers to interrogatories and the operative lease between Appellant and Ms. Markle. Of note, Ms. Teeter provided the following answer to an interrogatory, asking her to state the "condition or defect which[, she] contend[s,] caused the accident:"

> The top step is approximately six and a half inches wide, which is too narrow to safely descend the stairs. Also, this top step is not level and the stairs are steep. [Ms. Teeter] acquired knowledge of the condition of the stairs by using the stairs. She acquired this knowledge approximately eleven months before the accident. [Ms. Teeter] used extreme caution when using the stairs.

Ms. Teeter's Answers to Interrogatories, attached as "Exhibit C" to Appellant's Motion for Summary Judgment, at ¶ 35.

Moreover, in her answers to interrogatories, Ms. Teeter acknowledged that she used the front steps to the residence "[a]pproximately every day for several months" and she was aware that "[t]he back door" to the residence constituted a secondary exit that "would [have] permit[ted] her to avoid the allegedly defective stairway." Id. at ¶ 44.

The operative lease between Appellant and Ms. Markle declared, in relevant part:

RESIDENTIAL LEASE

. . .

1. This LEASE, dated <u>December 1st, 2012</u> is between LANDLORD[] <u>Berwind Row LLC</u>[,] called "Landlord" and TENANT[] <u>Chasity Markle</u>[,] called "Tenant," for the Property located at <u>616 Berwind Road Hollidaysburg PA 16648</u>[,] called "Property."

. . .

RENTAL TERM

4. START AND END DATES OF LEASE (also called "Term")
   (A) Start Date: <u>December 1st 2012</u> []
   (B) End Date: <u>November 20th 2013</u> []

. . .

CARE AND USE OF PROPERTY

9. USE OF PROPERTY AND AUTHORIZED OCCUPANTS
   (A) Tenant will use Property as a residence ONLY.

. . .

11. LANDLORD'S RIGHT TO ENTER
   (A) Tenant agrees that Landlord or Landlord's representatives may enter the Property at reasonable hours to inspect, repair, or show the Property. Tenant does not have to allow possible tenants to enter unless they are with the Landlord or Landlord's representative, or they have written permission from the Landlord.

   (B) When possible, Landlord will give Tenant <u>24</u> hours notice of the date, time, and reason for the visit.

(C) In emergencies, Landlord may enter Property without notice. If Tenant is not present, Landlord will tell Tenant who was there and why within 24 hours of the visit.

. . .

12. CONDITION OF PROPERTY AT MOVE IN
Tenant has inspected the Property and agrees to accept the Property "as-is" . . . .

. . .

15. TENANT'S CARE OF PROPERTY
(A) Tenant will:

. . .

4. Tell Landlord immediately of any repairs needed and of any potentially harmful health or environmental conditions. . . .

(B) Tenant will not:

. . .

4. Make changes to the property, such as painting or remodeling, without the written permission of Landlord. Tenant agrees that any changes or improvements made will belong to the Landlord.

5. Perform any maintenance or repairs on the Property unless otherwise stated in the Rules and Regulations, if any.

(C) Tenant is solely responsible to pay the costs for repairing any damage that is the fault of Tenant or Tenant's family or guests.

ADDENDUM

. . .

> 2. Property Conditions – During your tenancy please report to us any loose or rotting handrails, bad steps or other dangerous conditions that may exist inside or outside of the unit.
>
> . . .
>
> 9. Repairs – Tenant(s) will be responsible for the price of any minor repairs provided the cost to fix said repair is $30 or less. The owner will be responsible for any repairs over $30 provided th[e] necessary repair was not due to tenant's negligence.

Operative Lease, attached as "Exhibit A" to Appellant's Motion for Summary Judgment, at 1-5 and Addendum.

Ms. Teeter responded to Appellant's summary judgment motion by claiming that Appellant was "the owner and possessor of the land where [Ms. Teeter] fell" and that, even if Appellant were a landlord out of possession, Appellant was still liable because it "retained a right of entry upon the premises and had constructive notice of the defective condition of the steps and railing." Ms. Teeter's Brief in Opposition, 10/29/15, at 3. Further, with respect to Appellant's claim that Ms. Teeter assumed the risk of her injuries, Ms. Teeter claimed that she could not use an alternate exit and entryway to the residence because the alternate path was blocked. See Ms. Teeter's Response in Opposition, 10/30/15, at 3. Ms. Teeter also attached her deposition transcript to her response, where she testified that the back door to the residence was blocked at the time she fell down the stairs. Ms. Teeter's Deposition, 6/26/15, at 10-12.

On April 28, 2016, the trial court heard oral argument on the motion for summary judgment. By order entered June 20, 2016, the trial court denied the motion. Trial Court Order, 6/20/16, at 1.

Appellant filed a timely application to amend the summary judgment order to allow for an interlocutory appeal by permission. See McDonald v. Whitewater Challengers, Inc., 116 A.3d 99, 104 (Pa. Super. 2015) ("an order denying summary judgment is ordinarily a non-appealable interlocutory order"). In its application to amend, Appellant requested that the trial court amend the order to state that the case "involves a controlling question of law to which there is substantial ground for difference of opinion and that an immediate appeal from the [o]rder may materially advance the ultimate termination of the matter." Appellant's Application to Amend, 7/14/16, at 5; see also 42 Pa.C.S.A. § 702(b).[2]

_____

[2] Section 702(b) declares:

> (b) Interlocutory appeals by permission.--When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

42 Pa.C.S.A. § 702(b).

The trial court later amended its summary judgment order to declare that the order "involves a controlling question of law to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter." Trial Court Order, 8/19/16, at 1. On September 16, 2016, Appellant filed a petition for permission to appeal in this Court. See Appellant's United States Postal Service Form 3817 Certificate of Mailing, 9/16/16, at 1.[3] On November 10, 2016, this Court granted Appellant's

_____

[3] In relevant part, Pennsylvania Rule of Appellate Procedure 1311 declares:

> Permission to appeal from an interlocutory order containing the statement prescribed by 42 Pa.C.S. § 702(b) may be sought by filing a petition for permission to appeal with the prothonotary of the appellate court within 30 days after entry of such order in the lower court or other government unit. . . . If the petition for permission to appeal is transmitted to the prothonotary of the appellate court by means of first class, express, or priority United States Postal Service mail, the petition shall be deemed received by the prothonotary for the purposes of Rule 121(a) (filing) on the date deposited in the United States mail, as shown on a United States Postal Service Form 3817 Certificate of Mailing, or other similar United States Postal Service form from which the date of deposit can be verified.

Pa.R.A.P. 1311(b). In this case, Appellant has included the United States Postal Service Form 3817 Certificate of Mailing in the certified record – and the certificate of mailing reveals that Appellant deposited its petition for permission to appeal in the mail on September 16, 2016. See Berwind Row, LLC v. Teeter, 96 WDM 2016, at Petition for Permission to Appeal.

petition for permission to appeal pursuant to Pennsylvania Rule of Appellate Procedure 1311.[4]

Appellant presents three issues for our review:

> [1.] Whether the trial court erred in denying [Appellant's] motion for summary judgment where there are no genuine issues of material fact as to [Appellant's] position and duty as a landlord out of possession and the tenant's duty to report any defects of the stairs or railings on the property[?]
>
> [2.] Whether the trial court erred in denying [Appellant's] motion for summary judgment where there are no genuine issues of material fact as to whether Plaintiff had assumed the risk of traversing an open and obvious danger where she had an alternative route available to her but nonetheless chose to traverse the allegedly dangerous condition of which she was well aware and had been warned of by the tenant (assuming arguendo there was a defect)[?]
>
> [3.] Whether the trial court erred in denying [Appellant's] motion for summary judgment where Plaintiff is unable to identify the alleged defect that caused her fall as set forth in her complaint[?]

Appellant's Brief at 7 (some internal capitalization omitted).

"Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear:  the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion."  Englert v. Fazio

_____

[4] The trial court did not enter an order directing the filing of a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

Mech. Servs., Inc., 932 A.2d 122, 124 (Pa. Super. 2007) (internal citations

omitted). Moreover,

> [s]ummary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

Id. (internal citations omitted).

First, Appellant claims that the trial court erred in denying its summary

judgment motion because it is a landlord out of possession and, as such, it is

subject to a "general rule of non-liability." Appellant's Brief at 21. According

to Appellant, "[n]either [Ms. Teeter] nor the [trial] court [] identified any

exception to the general rule of non-liability that may apply to [Appellant] in

this case." Id. This claim fails.

This Court has stated:

> As a general rule, a landlord out of possession is not liable for injuries incurred by third parties on the leased premises because the landlord has no duty to such persons. This general rule is based on the legal view of a lease transaction as the equivalent of a sale of the land for the term of the lease. Thus, liability is premised primarily on possession and control, and not merely [on] ownership.

Jones v. Levin, 940 A.2d 451, 454 (Pa. Super. 2007) (internal citations and

quotation omitted).

There are six exceptions to this general rule of non-liability for a landlord out of possession. Dorsey v. Cont'l Assocs., 591 A.2d 716, 718-719 (Pa. Super. 1991). We have declared:

> A landlord out of possession may incur liability (1) if he has reserved control over a defective portion of the demised premises; (2) if the demised premises are so dangerously constructed that the premises are a nuisance per se; (3) if the lessor has knowledge of a dangerous condition existing on the demised premises at the time of transferring possession and fails to disclose the condition to the lessee; (4) if the landlord leases the property for a purpose involving the admission of the public and he neglects to inspect for or repair dangerous conditions existing on the property before possession is transferred to the lessee; (5) if the lessor undertakes to repair the demised premises and negligently makes the repairs; or (6) if the lessor fails to make repairs after having been given notice of and a reasonable opportunity to remedy a dangerous condition existing on the leased premises.

Dorsey, 591 A.2d at 718-719 (internal quotations and citations omitted).

In this case, the trial court denied Appellant's summary judgment motion because, it concluded, there was "[a] genuine issue of material fact [] as to whether [Ms. Teeter] and [Appellant] had knowledge of the alleged dangerous or defective condition of the stairs and railing." Trial Court Opinion, 6/20/16, at 8-9. We agree with Appellant that this conclusion is erroneous, as Ms. Markle agreed to rent the property "as is," the alleged dangerous condition was open, and Ms. Teeter admitted that she was aware of the condition of the stairs for months prior to her fall. Therefore, the trial court's reason for denying summary judgment was incorrect.

Nevertheless, "we are not bound by the rationale of the trial court and may affirm on any basis." Richmond v. McHale, 35 A.3d 779, 786 n.2 (Pa. Super. 2012). And, as Ms. Teeter correctly argues in her brief, when viewing the record in the light most favorable to her as the nonmoving party, there is a genuine issue of material fact that Appellant is "subject to liability as a landlord out of possession under the reserved control exception." Ms. Teeter's Brief at 6. To be sure, the case at bar is controlled by our opinion in Jones.

In Jones, the plaintiff sued the defendant after she fell on ice that had accumulated in a parking lot. The defendant owned the parking lot, but leased it to a company named Sam Levin, Inc. Id. at 452-453. The trial court granted the defendant's summary judgment motion on the basis that the defendant was "a landlord out of possession" who "did not have 'control' of [] the [premises] on which [the plaintiff] was caused to slip [and] fall." Id. at 453.

On appeal, this Court explained the "reserved control" exception to the general rule of non-liability for an out-of-possession landlord:

> the landlord may be liable if he or she has reserved control over a defective portion of the leased premises or over a portion of the leased premises which is necessary to the safe use of the property (the "reserved control" exception). Restatement (Second) of Torts § 361. The reserved control exception is most clearly applicable to cases involving "common areas" such as shared steps or hallways in buildings leased to multiple tenants. However, the applicability of the exception is not limited to such well-defined "common areas." Our Supreme Court invoked

- 13 -

the reserved control exception in a case involving an allegedly defective radiator in one tenant's unit of a building occupied by several commercial tenants, after the landlord-owner of the building was sued for negligence by a tenant who had been seriously burned by steam from the radiator. [Smith v. M.P.W. Realty Co., 225 A.2d 227, 228–229 (Pa. 1967)]. Importantly, the entire building was served by a central steam-heating system, which was controlled and operated by the landlord. As our Supreme Court explained,

> where the landlord retains control of a part of the leased premises, which is necessary to the safe use of the leased portion, he is liable to the lessee and others lawfully on the premises for physical harm caused by a dangerous condition existing upon that part over which he retains control, if by the exercise of reasonable care he could have discovered the condition and the risk involved, and made the condition safe.

> Smith, 225 A.2d at 229 (citing Restatement (Second) of Torts § 361 and also noting that § 361 had previously been applied to plumbing and heating systems over which the landlord had retained control).

Jones, 940 A.2d at 454-455 (some internal citations omitted).

The Jones Court held that the trial court erred in granting summary judgment to the defendant because, first, there was a genuine issue of material fact as to whether the lease between the defendant and Sam Levin, Inc. was a sham. Id. at 456. As an alternative holding, however, the Jones Court held that – even if the lease were not a sham – the explicit terms of the lease between the defendant and Sam Levin, Inc. created a genuine issue of material fact as to whether the defendant "reserved control" over the parking lot. Id. The Court explained:

> even the terms of the [] lease suggested that the [defendant] retained some control over the property.

- 14 -

> Although, under the lease, Sam Levin, Inc., as tenant, was responsible for all repairs to the premises, the terms of the lease also provided that the tenant "shall make no structural repairs or alterations without [the defendant's] consent." In light of this provision, we conclude that, even under the [] lease, there is a genuine issue of material fact as to whether the [defendant] continued to exercise control over defective portions of the property in question. If the [defendant] continued to exercise such control, the reserved control exception to the general rule of out-of-possession landlord non-liability may be applicable.

Id. (internal citations omitted) (emphasis added).

The alternate holding in Jones is binding on this Court. Commonwealth v. Reed, 971 A.2d 1216, 1220 (Pa. 2009) ("where a decision rests on two or more grounds equally valid, none may be relegated to the inferior status of obiter dictum") (internal quotations, citations, and corrections omitted). Moreover, the alternate holding in Jones mandates that we uphold the trial court's summary judgment order because, in the case at bar, the operative lease specifically declares:

> (B) Tenant will not:
>
> . . .
>
> 4. Make changes to the property, such as painting or remodeling, without the written permission of Landlord. Tenant agrees that any changes or improvements made will belong to the Landlord.
>
> 5. Perform any maintenance or repairs on the Property unless otherwise stated in the Rules and Regulations, if any.

Operative Lease, attached as "Exhibit A" to Appellant's Motion for Summary Judgment, at 3 (emphasis added).

As was true in Jones, the above lease provisions forbid the tenant from making any repairs to the alleged dangerous condition. Therefore, pursuant to Jones, the above provisions create "a genuine issue of material fact as to whether the [Appellant] continued to exercise control over defective portions of the property in question." See Jones, 940 A.2d at 456. As such, under Jones, we must conclude that Appellant's first claim on appeal fails because, "[i]f [Appellant] continued to exercise such control, the reserved control exception to the general rule of out-of-possession landlord non-liability may be applicable." See id.

Next, Appellant claims that the trial court erred in denying its summary judgment motion because Ms. Teeter assumed the risk of traversing the alleged dangerous stairs. Appellant's Brief at 21. We conclude the trial court properly determined that a genuine issue of material fact exists as to whether Ms. Teeter assumed the risk, thus defeating Appellant's summary judgment motion.

We have explained:

> Under the doctrine of assumption of the risk, a defendant is relieved of its duty to protect a plaintiff where the plaintiff has voluntarily and deliberately proceeded to face a known and obvious risk and therefore is considered to have assumed liability for his own injuries. Our Supreme Court on occasion has affirmed a trial court's decision that as a matter of law, a plaintiff voluntarily proceeded in the face of a known risk and absolved the defendant from responsibility

for the injuries sustained. Howell v. Clyde, 620 A.2d 1107 (Pa 1993) (four justices concurring in this portion of holding); Carrender v. Fitterer, 469 A.2d 120 (Pa. 1983).

However, the determination that the plaintiff has assumed the risk of his injuries such that recovery is prevented should occur only where it is beyond question that the plaintiff voluntarily and knowingly proceeded in the face of an obvious and dangerous condition. Struble v. Valley Forge Military Academy, 665 A.2d 4 (Pa. Super. 1995); Long v. Norriton Hydraulics Inc., 662 A.2d 1089 (Pa. Super. 1995).

Barrett v. Fredavid Builders, Inc. 685 A.2d 129, 130-131 (Pa. Super. 1996).

As our Supreme Court has held, if the plaintiff has "agreed to accept the risk and to undertake to look out for [her]self," the landowner is relieved of its duty of care to the plaintiff and, thus, does not have any duty to protect the plaintiff against the dangers she knowingly and voluntarily chooses to face. Carrender, 469 A.2d at 125. Nevertheless, under the Second Restatement of Torts:

(1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk.

(2) The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to

(a) avert harm to himself or another, or

(b) exercise or protect a right or privilege of which the defendant has no right to deprive him.

Restatement (Second) of Torts § 496E.

In the case at bar, there is a genuine issue of material fact as to whether Ms. Teeter assumed the risk of her injury because, viewing the record in the light most favorable to Ms. Teeter, the steps upon which she fell may have been the sole usable means of egress and ingress to the property. To be sure, while Ms. Teeter acknowledged that the back door to the residence constituted a secondary exit that "would [have] permit[ted] her to avoid the allegedly defective stairway," Ms. Teeter testified that the back door was "blocked" at the time she fell down the front stairs. Ms. Teeter's Answers to Interrogatories, attached as "Exhibit C" to Appellant's Motion for Summary Judgment, at ¶ 44; Ms. Teeter's Deposition, 6/26/15, at 10-12. Therefore, there is a genuine issue of material fact as to whether Ms. Teeter voluntarily encountered the risk associated with using the front stairs. Thus, the trial court properly held that Appellant was not entitled to summary judgment on the ground that Ms. Teeter had assumed the risk of her injury.

Finally, Appellant claims that the trial court erred in denying its summary judgment motion because Ms. Teeter cannot identify the cause of her fall. Appellant's Brief at 24. This is simply incorrect, as Ms. Teeter testified that she fell because of the unreasonably dangerous front steps and railing. Ms. Teeter's Deposition, 6/26/15, at 9-11; see also Ms. Teeter's Answers to Interrogatories, attached as "Exhibit C" to Appellant's Motion for Summary Judgment, at ¶ 35 (declaring that she fell because the top step

was "too narrow" and "not level" and also that the stairs upon which she fell

were too steep).[5] Therefore, Appellant's final claim on appeal fails.

Order affirmed. Jurisdiction relinquished.

_____

[5] Ms. Teeter testified:

> [Ms. Teeter]: Well, the top of the porch had a shake to it. It was not nailed in correctly I guess, or it was just getting old. . . . But the steps were so narrow that my feet don't fit on the steps. It's a steep drop down. The steps are real old.
>
> I grabbed the side of the railing to walk down. I had the [book bag], which she only had a few papers in the [book bag], but I grabbed her [book bag] and proceeded to walk down the steps. And I just, I don't know how I slipped, but I just fell boom, boom, boom, down them all. Landed on the bottom.
>
> [Appellant's Attorney]: So you're not really sure what exactly –
>
> [Ms. Teeter]: I think the railing gave and it caused me to fall.
>
> [Appellant's Attorney]: You think the railing was loose?
>
> [Ms. Teeter]: Well, that and the step itself. The first step is more, I don't know what you would say, it pulled out where it is built, where it connects to the house I should say. It has a slope.

Ms. Teeter's Deposition, 6/26/15, at 9-10.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/10/2017</u>